# ASAHI METAL INDUSTRY CO., LTD. *v.* SUPERIOR COURT OF CALIFORNIA, SOLANO COUNTY (CHENG SHIN RUBBER INDUSTRIAL CO., LTD., REAL PARTY IN INTEREST)

No. 85–693.   Argued November 5, 1986—Decided February 24, 1987

O'CONNOR, J., announced the judgment of the Court and delivered the opinion for a unanimous Court with respect to Part I, the opinion of the Court with respect to Part II–B, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined, and an opinion with respect to Parts II–A and III, in which REHNQUIST, C. J., and POWELL and SCALIA, JJ., joined. BRENNAN, J., filed an opinion concurring in part and concurring in the judgment, in which WHITE, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 116. STEVENS, J., filed an opinion concurring in part and concurring in the judgment, in which WHITE and BLACKMUN, JJ., joined, *post*, p. 121.

*Graydon S. Staring* argued the cause for petitioner. With him on the briefs was *Richard D. Hoffman.*

*Ronald R. Haven* argued the cause and filed a brief for respondent.*

JUSTICE O'CONNOR announced the judgment of the Court and delivered the unanimous opinion of the Court with respect to Part I, the opinion of the Court with respect to Part II–B, in which THE CHIEF JUSTICE, JUSTICE BRENNAN, JUSTICE WHITE, JUSTICE MARSHALL, JUSTICE BLACKMUN, JUSTICE POWELL, and JUSTICE STEVENS join, and an opinion with respect to Parts II–A and III, in which THE CHIEF JUSTICE, JUSTICE POWELL, and JUSTICE SCALIA join.

This case presents the question whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes "minimum contacts" between the defendant and the forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316 (1945), quoting *Milliken* v. *Meyer,* 311 U. S. 457, 463 (1940).

I

On September 23, 1978, on Interstate Highway 80 in Solano County, California, Gary Zurcher lost control of his Honda motorcycle and collided with a tractor. Zurcher was severely injured, and his passenger and wife, Ruth Ann Moreno, was killed. In September 1979, Zurcher filed a product liability action in the Superior Court of the State of

---

*Briefs of *amici curiae* urging reversal were filed for Alcan Aluminio Do Brasil, S. A. by *Lawrence A. Salibra II;* for the American Chamber of Commerce in the United Kingdom et al. by *Douglas E. Rosenthal, Donald I. Baker,* and *Andreas F. Lowenfeld;* and for Cassiar Mining Corp. by *David Booth Beers* and *Wendy S. White.*

*George E. Murphy* filed a brief for the California Manufacturers Association as *amicus curiae* urging affirmance.

California in and for the County of Solano. Zurcher alleged that the 1978 accident was caused by a sudden loss of air and an explosion in the rear tire of the motorcycle, and alleged that the motorcycle tire, tube, and sealant were defective. Zurcher's complaint named, *inter alia*, Cheng Shin Rubber Industrial Co., Ltd. (Cheng Shin), the Taiwanese manufacturer of the tube. Cheng Shin in turn filed a cross-complaint seeking indemnification from its codefendants and from petitioner, Asahi Metal Industry Co., Ltd. (Asahi), the manufacturer of the tube's valve assembly. Zurcher's claims against Cheng Shin and the other defendants were eventually settled and dismissed, leaving only Cheng Shin's indemnity action against Asahi.

California's long-arm statute authorizes the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code Ann. § 410.10 (West 1973). Asahi moved to quash Cheng Shin's service of summons, arguing the State could not exert jurisdiction over it consistent with the Due Process Clause of the Fourteenth Amendment.

In relation to the motion, the following information was submitted by Asahi and Cheng Shin. Asahi is a Japanese corporation. It manufactures tire valve assemblies in Japan and sells the assemblies to Cheng Shin, and to several other tire manufacturers, for use as components in finished tire tubes. Asahi's sales to Cheng Shin took place in Taiwan. The shipments from Asahi to Cheng Shin were sent from Japan to Taiwan. Cheng Shin bought and incorporated into its tire tubes 150,000 Asahi valve assemblies in 1978; 500,000 in 1979; 500,000 in 1980; 100,000 in 1981; and 100,000 in 1982. Sales to Cheng Shin accounted for 1.24 percent of Asahi's income in 1981 and 0.44 percent in 1982. Cheng Shin alleged that approximately 20 percent of its sales in the United States are in California. Cheng Shin purchases valve assemblies from other suppliers as well, and sells finished tubes throughout the world.

In 1983 an attorney for Cheng Shin conducted an informal examination of the valve stems of the tire tubes sold in one cycle store in Solano County. The attorney declared that of the approximately 115 tire tubes in the store, 97 were purportedly manufactured in Japan or Taiwan, and of those 97, 21 valve stems were marked with the circled letter "A", apparently Asahi's trademark. Of the 21 Asahi valve stems, 12 were incorporated into Cheng Shin tire tubes. The store contained 41 other Cheng Shin tubes that incorporated the valve assemblies of other manufacturers. Declaration of Kenneth B. Shepard in Opposition to Motion to Quash Subpoena, App. to Brief for Respondent 5–6. An affidavit of a manager of Cheng Shin whose duties included the purchasing of component parts stated: "'In discussions with Asahi regarding the purchase of valve stem assemblies the fact that my Company sells tubes throughout the world and specifically the United States has been discussed. I am informed and believe that Asahi was fully aware that valve stem assemblies sold to my Company and to others would end up throughout the United States and in California.'" 39 Cal. 3d 35, 48, n. 4, 702 P. 2d 543, 549–550, n. 4 (1985). An affidavit of the president of Asahi, on the other hand, declared that Asahi "'has never contemplated that its limited sales of tire valves to Cheng Shin in Taiwan would subject it to lawsuits in California.'" *Ibid.* The record does not include any contract between Cheng Shin and Asahi. Tr. of Oral Arg. 24.

Primarily on the basis of the above information, the Superior Court denied the motion to quash summons, stating: "Asahi obviously does business on an international scale. It is not unreasonable that they defend claims of defect in their product on an international scale." Order Denying Motion to Quash Summons, *Zurcher* v. *Dunlop Tire & Rubber Co.*, No. 76180 (Super. Ct., Solano County, Cal., Apr. 20, 1983).

The Court of Appeal of the State of California issued a peremptory writ of mandate commanding the Superior Court to quash service of summons. The court concluded that "it

would be unreasonable to require Asahi to respond in California solely on the basis of ultimately realized foreseeability that the product into which its component was embodied would be sold all over the world including California." App. to Pet. for Cert. B5–B6.

The Supreme Court of the State of California reversed and discharged the writ issued by the Court of Appeal. 39 Cal. 3d 35, 702 P. 2d 543 (1985). The court observed: "Asahi has no offices, property or agents in California. It solicits no business in California and has made no direct sales [in California]." *Id.*, at 48, 702 P. 2d, at 549. Moreover, "Asahi did not design or control the system of distribution that carried its valve assemblies into California." *Id.*, at 49, 702 P. 2d, at 549. Nevertheless, the court found the exercise of jurisdiction over Asahi to be consistent with the Due Process Clause. It concluded that Asahi knew that some of the valve assemblies sold to Cheng Shin would be incorporated into tire tubes sold in California, and that Asahi benefited indirectly from the sale in California of products incorporating its components. The court considered Asahi's intentional act of placing its components into the stream of commerce—that is, by delivering the components to Cheng Shin in Taiwan—coupled with Asahi's awareness that some of the components would eventually find their way into California, sufficient to form the basis for state court jurisdiction under the Due Process Clause.

We granted certiorari, 475 U. S. 1044 (1986), and now reverse.

## II

### A

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the

forum State." *Burger King Corp.* v. *Rudzewicz,* 471 U. S. 462, 474 (1985), quoting *International Shoe Co.* v. *Washington,* 326 U. S., at 316. Most recently we have reaffirmed the oft-quoted reasoning of *Hanson* v. *Denckla,* 357 U. S. 235, 253 (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U. S., at 475. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Ibid.,* quoting *McGee* v. *International Life Insurance Co.,* 355 U. S. 220, 223 (1957) (emphasis in original).

Applying the principle that minimum contacts must be based on an act of the defendant, the Court in *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U. S. 286 (1980), rejected the assertion that a *consumer's* unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant. It had been argued in *World-Wide Volkswagen* that because an automobile retailer and its wholesale distributor sold a product mobile by design and purpose, they could foresee being haled into court in the distant States into which their customers might drive. The Court rejected this concept of foreseeability as an insufficient basis for jurisdiction under the Due Process Clause. *Id.,* at 295–296. The Court disclaimed, however, the idea that "foreseeability is wholly irrelevant" to personal jurisdiction, concluding that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.,* at 297–298 (citation omitted). The Court reasoned:

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson* v. *Denckla*, 357 U. S. [235,] 253 [(1958)], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others." *Id.*, at 297.

In *World-Wide Volkswagen* itself, the state court sought to base jurisdiction not on any act of the defendant, but on the foreseeable unilateral actions of the consumer. Since *World-Wide Volkswagen*, lower courts have been confronted with cases in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum State, but the defendant did nothing else to purposefully avail itself of the market in the forum State. Some courts have understood the Due Process Clause, as interpreted in *World-Wide Volkswagen*, to allow an exercise of personal jurisdiction to be based on no more than the defendant's act of placing the product in the stream of commerce. Other courts have understood the Due Process Clause and the above-quoted language in *World-Wide Volkswagen* to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.

The reasoning of the Supreme Court of California in the present case illustrates the former interpretation of *World-Wide Volkswagen*. The Supreme Court of California held that, because the stream of commerce eventually brought

some valves Asahi sold Cheng Shin into California, Asahi's awareness that its valves would be sold in California was sufficient to permit California to exercise jurisdiction over Asahi consistent with the requirements of the Due Process Clause. The Supreme Court of California's position was consistent with those courts that have held that mere foreseeability or awareness was a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum State while still in the stream of commerce. See *Bean Dredging Corp.* v. *Dredge Technology Corp.*, 744 F. 2d 1081 (CA5 1984); *Hedrick* v. *Daiko Shoji Co.*, 715 F. 2d 1355 (CA9 1983).

Other courts, however, have understood the Due Process Clause to require something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant. In the present case, for example, the State Court of Appeal did not read the Due Process Clause, as interpreted by *World-Wide Volkswagen*, to allow "mere foreseeability that the product will enter the forum state [to] be enough by itself to establish jurisdiction over the distributor and retailer." App. to Pet. for Cert. B5. In *Humble* v. *Toyota Motor Co.*, 727 F. 2d 709 (CA8 1984), an injured car passenger brought suit against Arakawa Auto Body Company, a Japanese corporation that manufactured car seats for Toyota. Arakawa did no business in the United States; it had no office, affiliate, subsidiary, or agent in the United States; it manufactured its component parts outside the United States and delivered them to Toyota Motor Company in Japan. The Court of Appeals, adopting the reasoning of the District Court in that case, noted that although it "does not doubt that Arakawa could have foreseen that its product would find its way into the United States," it would be "manifestly unjust" to require Arakawa to defend itself in the United States. *Id.*, at 710–711, quoting 578 F. Supp. 530, 533 (ND Iowa 1982). See also *Hutson* v. *Fehr Bros.*,

*Inc.*, 584 F. 2d 833 (CA8 1978); see generally *Max Daetwyler Corp.* v. *R. Meyer*, 762 F. 2d 290, 299 (CA3 1985) (collecting "stream of commerce" cases in which the "manufacturers involved had made deliberate decisions to market their products in the forum state").

We now find this latter position to be consonant with the requirements of due process. The "substantial connection," *Burger King*, 471 U. S., at 475; *McGee*, 355 U. S., at 223, between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* *Burger King, supra,* at 476; *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, 774 (1984). The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Assuming, *arguendo*, that respondents have established Asahi's awareness that some of the valves sold to Cheng Shin would be incorporated into tire tubes sold in California, respondents have not demonstrated any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California. Cf. *Hicks* v. *Kawasaki Heavy Indus-*

*tries*, 452 F. Supp. 130 (MD Pa. 1978). There is no evidence that Asahi designed its product in anticipation of sales in California. Cf. *Rockwell International Corp.* v. *Costruzioni Aeronautiche Giovanni Agusta*, 553 F. Supp. 328 (ED Pa. 1982). On the basis of these facts, the exertion of personal jurisdiction over Asahi by the Superior Court of California * exceeds the limits of due process.

## B

The strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over Asahi under circumstances that would offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U. S., at 316, quoting *Milliken* v. *Meyer*, 311 U. S., at 463.

We have previously explained that the determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U. S., at 292 (citations omitted).

---

*We have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of *national* contacts, rather than on the contacts between the defendant and the State in which the federal court sits. See *Max Daetwyler Corp.* v. *R. Meyer*, 762 F. 2d 290, 293–295 (CA3 1985); *DeJames* v. *Magnificence Carriers, Inc.*, 654 F. 2d 280, 283 (CA3 1981); see also Born, Reflections on Judicial Jurisdiction in International Cases, to be published in 17 Ga. J. Int'l & Comp. L. 1 (1987); Lilly, Jurisdiction Over Domestic and Alien Defendants, 69 Va. L. Rev. 85, 127–145 (1983).

A consideration of these factors in the present case clearly reveals the unreasonableness of the assertion of jurisdiction over Asahi, even apart from the question of the placement of goods in the stream of commerce.

Certainly the burden on the defendant in this case is severe. Asahi has been commanded by the Supreme Court of California not only to traverse the distance between Asahi's headquarters in Japan and the Superior Court of California in and for the County of Solano, but also to submit its dispute with Cheng Shin to a foreign nation's judicial system. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. In the present case, however, the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi are slight. All that remains is a claim for indemnification asserted by Cheng Shin, a Tawainese corporation, against Asahi. The transaction on which the indemnification claim is based took place in Taiwan; Asahi's components were shipped from Japan to Taiwan. Cheng Shin has not demonstrated that it is more convenient for it to litigate its indemnification claim against Asahi in California rather than in Taiwan or Japan.

Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished. The Supreme Court of California argued that the State had an interest in "protecting its consumers by ensuring that foreign manufacturers comply with the state's safety standards." 39 Cal. 3d, at 49, 702 P. 2d, at 550. The State Supreme Court's definition of California's interest, however, was overly broad. The dispute between Cheng Shin and Asahi is primarily about indemnification rather than safety

standards. Moreover, it is not at all clear at this point that California law should govern the question whether a Japanese corporation should indemnify a Taiwanese corporation on the basis of a sale made in Taiwan and a shipment of goods from Japan to Taiwan. *Phillips Petroleum Co.* v. *Shutts,* 472 U. S. 797, 821–822 (1985); *Allstate Insurance Co.* v. *Hague,* 449 U. S. 302, 312–313 (1981). The possibility of being haled into a California court as a result of an accident involving Asahi's components undoubtedly creates an additional deterrent to the manufacture of unsafe components; however, similar pressures will be placed on Asahi by the purchasers of its components as long as those who use Asahi components in their final products, and sell those products in California, are subject to the application of California tort law.

*World-Wide Volkswagen* also admonished courts to take into consideration the interests of the "several States," in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies. In the present case, this advice calls for a court to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the California court. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *United States* v. *First National City Bank,* 379 U. S. 378, 404 (1965) (Harlan, J., dissenting). See Born, Reflections on Judicial Jurisdiction in International Cases, to be published in 17 Ga. J. Int'l & Comp. L. 1 (1987).

Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair.

## III

Because the facts of this case do not establish minimum contacts such that the exercise of personal jurisdiction is consistent with fair play and substantial justice, the judgment of the Supreme Court of California is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE WHITE, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, concurring in part and concurring in the judgment.

I do not agree with the interpretation in Part II–A of the stream-of-commerce theory, nor with the conclusion that Asahi did not "purposely avail itself of the California market." *Ante*, at 112. I do agree, however, with the Court's conclusion in Part II–B that the exercise of personal jurisdiction over Asahi in this case would not comport with "fair play and substantial justice," *International Shoe Co.* v. *Washington*, 326 U. S. 310, 320 (1945). This is one of those rare cases in which "minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 477–478 (1985). I therefore join Parts I and II–B of the Court's opinion, and write separately to explain my disagreement with Part II–A.

Part II–A states that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed to-

ward the forum State." *Ante*, at 112. Under this view, a plaintiff would be required to show "[a]dditional conduct" directed toward the forum before finding the exercise of jurisdiction over the defendant to be consistent with the Due Process Clause. *Ibid.* I see no need for such a showing, however. The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State. Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct.[1]

---

[1] See, *e. g.*, *Bean Dredging Corp.* v. *Dredge Technology Corp.*, 744 F. 2d 1081 (CA5 1984); *Hedrick* v. *Daiko Shoji Co.*, 715 F. 2d 1355 (CA9 1983); *Nelson* v. *Park Industries, Inc.*, 717 F. 2d 1120, 1126 (CA7 1983), cert. denied, 465 U. S. 1024 (1984); *Stabilisierungsfonds fur Wein* v. *Kaiser Stuhl Wine Distributors Pty. Ltd.*, 207 U. S. App. D. C. 375, 378, 647 F. 2d 200, 203 (1981); *Poyner* v. *Erma Werke Gmbh*, 618 F. 2d 1186, 1190–1191 (CA6), cert. denied, 449 U. S. 841 (1980); cf. *Fidelity & Casualty Co. of New York* v. *Philadelphia Resins Corp.*, 766 F. 2d 440 (CA10 1985) (endorsing stream-of-commerce theory but finding it inapplicable in instant case), cert. denied, 474 U. S. 1082 (1986); *Montalbano* v. *Easco Hand Tools, Inc.*, 766 F. 2d 737 (CA2 1985) (noting potential applicability of stream-of-commerce theory, but remanding for further factual findings). See generally Currie, The Growth of the Long-Arm: Eight

The endorsement in Part II–A of what appears to be the minority view among Federal Courts of Appeals[2] represents a marked retreat from the analysis in *World-Wide Volkswagen* v. *Woodson*, 444 U. S. 286 (1980). In that case, "respondents [sought] to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." *Id.*, at 295. The Court held that the possibility of an accident in Oklahoma, while to some extent foreseeable in light of the inherent mobility of the automobile, was not enough to establish

Years of Extended Jurisdiction in Illinois, 1963 U. Ill. Law Forum 533, 546–560 (approving and tracing development of the stream-of-commerce theory); C. Wright & A. Miller, Federal Practice and Procedure § 1069, pp. 259–261 (1969) (recommending in effect a stream-of-commerce approach); Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1168–1172 (1966) (same).

[2] The Court of Appeals for the Eighth Circuit appears to be the only Court of Appeals to have expressly adopted a narrow construction of the stream-of-commerce theory analogous to the one articulated in Part II–A today, although the Court of Appeals for the Eleventh Circuit has implicitly adopted it. See *Humble* v. *Toyota Motor Co., Ltd.*, 727 F. 2d 709 (CA8 1984); *Banton Industries, Inc.* v. *Dimatic Die & Tool Co.*, 801 F. 2d 1283 (CA11 1986). Two other Courts of Appeals have found the theory inapplicable when only a single sale occurred in the forum State, but do not appear committed to the interpretation of the theory that the Court adopts today. *E. g., Chung* v. *NANA Development Corp.*, 783 F. 2d 1124 (CA4), cert. denied, 479 U. S. 948 (1986); *Dalmau Rodriguez* v. *Hughes Aircraft Co.*, 781 F. 2d 9 (CA1 1986). Similarly, the Court of Appeals for the Third Circuit has not interpreted the theory as JUSTICE O'CONNOR's opinion has, but has rejected stream-of-commerce arguments for jurisdiction when the relationship between the distributor and the defendant "remains in dispute" and "evidence indicating that [defendant] could anticipate either use of its product or litigation in [the forum State] is totally lacking," *Max Daetwyler Corp.* v. *R. Meyer*, 762 F. 2d 290, 298, 300, n. 13, cert. denied, 474 U. S. 980 (1985), and when the defendant's product was not sold in the forum State and the defendant "did not take advantage of an indirect marketing scheme," *DeJames* v. *Magnificence Carriers, Inc.*, 654 F. 2d 280, 285, cert. denied, 454 U. S. 1085 (1981).

minimum contacts between the forum State and the retailer or distributor. *Id.*, at 295–296. The Court then carefully explained:

> "[T]his is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." *Id.*, at 297.

The Court reasoned that when a corporation may reasonably anticipate litigation in a particular forum, it cannot claim that such litigation is unjust or unfair, because it "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State." *Ibid.*

To illustrate the point, the Court contrasted the foreseeability of litigation in a State to which a consumer fortuitously transports a defendant's product (insufficient contacts) with the foreseeability of litigation in a State where the defendant's product was regularly *sold* (sufficient contacts). The Court stated:

> "Hence if the *sale* of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased*

*by consumers* in the forum State." *Id.*, at 297–298 (emphasis added).

The Court concluded its illustration by referring to *Gray* v. *American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 176 N. E. 2d 761 (1961), a well-known stream-of-commerce case in which the Illinois Supreme Court applied the theory to assert jurisdiction over a component-parts manufacturer that sold no components directly in Illinois, but did sell them to a manufacturer who incorporated them into a final product that was sold in Illinois. 444 U. S., at 297–298.

The Court in *World-Wide Volkswagen* thus took great care to distinguish "between a case involving goods which reach a distant State through a chain of distribution and a case involving goods which reach the same State because a consumer . . . took them there." *Id.*, at 306–307 (BRENNAN, J., dissenting).[3] The California Supreme Court took note of this distinction, and correctly concluded that our holding in *World-Wide Volkswagen* preserved the stream-of-commerce theory. See App. to Pet. for Cert. C–9, and n. 3, C–13— C–15; cf. Comment, Federalism, Due Process, and Minimum Contacts: *World-Wide Volkswagen Corp* v. *Woodson*, 80 Colum. L. Rev. 1341, 1359–1361, and nn. 140–146 (1980).

---

[3] In dissent, I argued that the distinction was without constitutional significance, because in my view the foreseeability that a customer would use a product in a distant State was a sufficient basis for jurisdiction. 444 U. S., at 306–307, and nn. 11, 12. See also *id.*, at 315 (MARSHALL, J., dissenting) ("I cannot agree that jurisdiction is necessarily lacking if the product enters the State not through the channels of distribution but in the course of its intended use by the consumer"); *id.*, at 318–319 (BLACKMUN, J., dissenting) ("[F]oreseeable use in another State seems to me little different from foreseeable resale in another State"). But I do not read the decision in *World-Wide Volkswagen* to establish a *per se* rule against the exercise of jurisdiction where the contacts arise from a consumer's use of the product in a given State, but only a rule against jurisdiction in cases involving "one, isolated occurrence [of consumer use, amounting to] . . . the fortuitous circumstance . . . ." *Id.*, at 295. See *Hedrick* v. *Daiko Shoji Co.*, 715 F. 2d, at 1358–1359.

In this case, the facts found by the California Supreme Court support its finding of minimum contacts. The court found that "[a]lthough Asahi did not design or control the system of distribution that carried its valve assemblies into California, Asahi was aware of the distribution system's operation, and it knew that it would benefit economically from the sale in California of products incorporating its components." App. to Pet. for Cert. C–11.[4] Accordingly, I cannot join the determination in Part II–A that Asahi's regular and extensive sales of component parts to a manufacturer it knew was making regular sales of the final product in California is insufficient to establish minimum contacts with California.

JUSTICE STEVENS, with whom JUSTICE WHITE and JUSTICE BLACKMUN join, concurring in part and concurring in the judgment.

The judgment of the Supreme Court of California should be reversed for the reasons stated in Part II–B of the Court's opinion. While I join Parts I and II–B, I do not join Part II–A for two reasons. First, it is not necessary to the Court's decision. An examination of minimum contacts is not always necessary to determine whether a state court's assertion of personal jurisdiction is constitutional. See *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 476–478 (1985). Part II–B establishes, after considering the factors set forth in *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 292 (1980), that California's exercise of jurisdiction over Asahi in this case would be "unreasonable and unfair." *Ante*, at 116. This finding alone requires reversal; this case fits within the rule that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat

---

[4] Moreover, the Court found that "at least 18 percent of the tubes sold in a particular California motorcycle supply shop contained Asahi valve assemblies," App. to Pet. for Cert. C–11, n. 5, and that Asahi had an ongoing business relationship with Cheng Shin involving average annual sales of hundreds of thousands of valve assemblies, *id.*, at C–2.

the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U. S., at 477–478 (quoting *International Shoe Co.* v. *Washington*, 326 U. S. 310, 320 (1945)). Accordingly, I see no reason in this case for the plurality to articulate "purposeful direction" or any other test as the nexus between an act of a defendant and the forum State that is necessary to establish minimum contacts.

Second, even assuming that the test ought to be formulated here, Part II–A misapplies it to the facts of this case. The plurality seems to assume that an unwavering line can be drawn between "mere awareness" that a component will find its way into the forum State and "purposeful availment" of the forum's market. *Ante*, at 112. Over the course of its dealings with Cheng Shin, Asahi has arguably engaged in a higher quantum of conduct than "[t]he placement of a product into the stream of commerce, without more . . . ." *Ibid.* Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components. In most circumstances I would be inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute "purposeful availment" even though the item delivered to the forum State was a standard product marketed throughout the world.