535 So.2d 619 (1988)
CHINA PRODUCTS NORTHWEST, INC., Appellant,
v.
D.J. BROESAMLE COMPANY and Ace Hardware Corporation, Appellees.
No. 88-953.
District Court of Appeal of Florida, First District.
December 9, 1988.
Leslie King O'Neal of Markel, McDonough & O'Neal, Orlando, for appellant.
*620 James A. Dixon, Jr., and Tommy E. Roberts, Jr. of Dixon, Blanton and Shelley, Tallahassee, for appellees.
SMITH, Chief Judge.
China Products Northwest, Inc. (China Products) appeals an order denying its motion to dismiss appellees' third party action for lack of personal jurisdiction. We reverse.
China Products is in the import/export business principally involved in the trade between China and America. The company initially had its principal place of business in Seattle, but now has its principal place of business in New York City. China Products began doing business with appellee, D.J. Broesamle Company (Broesamle), a tool and chain concern, in the mid 1970's.
On August 30, 1984, China Products procured some chain for Broesamle from China. The chain was shipped from China to a customs clearing agent in New Orleans where Broesamle took possession of the chain. Broesamle shipped the chain to appellee, Ace Hardware. Ace Hardware distributed it to its various stores, one of which was the Jefferson Ace Hardware and Home Center in Jefferson County, Florida. This chain was then sold to a customer, Felix Bullard. The use of this chain by Bullard and James Cobb allegedly resulted in serious bodily injury to Cobb, a resident of Jefferson County. Cobb and his wife sued Jefferson Ace Hardware and Home Center, D.J. Broesamle Company, and Ace Hardware. Appellees, Broesamle and Ace Hardware, filed a third party complaint against China Products.
The jurisdictional allegations of the amended third party complaint follow:
4. Prior to November 11, 1985, CHINA sold, processed and distributed a certain new steel chain to BROESAMLE, ... who in turn sold and distributed the said chain to ACE, who in turn sold and distributed said chain to the Defendant JEFFERSON ACE HARDWARE AND HOME CENTER, INC., a Florida corporation whose principal place of business is in Monticello, Jefferson County, Florida.
5. CHINA sold, processed and distributed the subject chain in the ordinary course of commerce, trade or use of said chain.
6. CHINA sold, processed and distributed said chain in circumstances whereby it knew or should have reasonably known that said chain would be resold in Florida and purchased by consumers in Florida and has therefore purposefully availed itself of the market for its product in Florida.
7. At the time CHINA delivered its product to BROESAMLE, said product was placed into the stream of commerce with the expectation that the product would be purchased by consumers in Florida.
Appellees seek to predicate personal jurisdiction on section 48.193(1)(f)2. which provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
.....
(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
.....
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
China Products moved to dismiss on the grounds of lack of personal jurisdiction, arguing that China Products did not have sufficient minimum contacts with Florida to subject itself to the jurisdiction of a Florida court. In support of the motion, China Products filed the affidavit of Ron Phipps, the president, in which he stated that China Products does not now and has *621 not in the past had a resident agent or officer in Florida; has not and does not operate, conduct, engage in or carry on a business or business venture in Florida; and has not and does not sell, lease or consign any personal property directly or through any distributor, jobber, or broker in Florida.
In his deposition, Phipps explained China Products' role in bringing chain to the United States. Broesamle would contact China Products and place an order for a particular quantity and type of chain. China Products had located a Chinese corporation from which it could obtain chain and it would solicit a price from the Chinese which Broesamle would sometimes accept. If there was an acceptance, China Products would enter into a contract with Broesamle and then enter into a contract with the Chinese corporation. The Chinese would ship the product and China Products would send Broesamle the necessary documents for clearance of customs. The chain was sent to a port designated by Broesamle. Broesamle provided the insurance, paid the duties, and took possession of the product. China Products never physically touched nor inspected the product at any stage.
Phipps explained that it had no exclusive distributorship with the Chinese corporation and that in 1984, it was not selling chain to any other customer in the United States besides Broesamle. China Products didn't buy chain for its own account, all the chain business was specifically for the Broesamle account. China Products had no specific knowledge where the chain went once it arrived in the United States, and Broesamle took possession of it. China Products made a small commission on the sale of the chain.
Phipps testified that China Products usually dealt in tea, honey, spices, feather and down, although it did sell some striking-type tools from time to time. According to Phipps, China Products did have one contact with Florida several years ago when it sold some tea by phone to a supermarket chain in Florida.
In their attempt to acquire jurisdiction over China Products under section 48.193(1)(f)2., appellees have alleged that China Products "processed" the chain in question.[1] Even assuming, without deciding, that section 48.193(1)(f)2. applies and permits service of process on China Products under the theory that it "processed" the chain, the exercise of jurisdiction must nevertheless pass constitutional muster, and Florida cannot acquire personal jurisdiction over China Products unless there exists "minimum contacts" between China Products and Florida. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (state court may exercise personal jurisdiction over a nonresident defendant only so long as there exists "minimum contacts" between the defendant and the forum state).
In World-Wide, the plaintiffs bought a car in New York, and while traveling through Oklahoma, they were involved in an accident which resulted in severe burns to occupants of the car. They brought suit in Oklahoma state court against the car manufacturer; its importer, Volkswagen of America; its regional distributor, World-Wide Volkswagen; and its retail dealer, Seaway Volkswagen. World-Wide and Seaway did no business in Oklahoma and disputed Oklahoma's jurisdiction over them. The United States Supreme Court agreed with them that there was a total absence of those affiliating circumstances upon which the Oklahoma state court could predicate jurisdiction. World-Wide and Seaway carried on no activity whatsoever in Oklahoma; they closed no sales and performed no services there; they neither regularly sold cars to Oklahoma residents nor indirectly, through others, sought to serve the Oklahoma market; they availed themselves of none of the benefits of Oklahoma law, and solicited no business there either through salespersons or through advertising reasonably calculated to reach that *622 state. The Supreme Court reiterated that maintenance of a suit against nonresident defendants must not offend the traditional notions of fair play and substantial justice, and the relationship between the forum state and the defendants must be such that it is reasonable to require them to defend the particular suit which is brought there. The court recognized that though it was foreseeable that automobiles sold by the defendants would travel to Oklahoma and that the automobile might cause injury in Oklahoma, the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state, but rather is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.
Each personal jurisdiction case depends on its own particular facts, but the focus is upon the extent to which the defendant has purposely availed itself of the privilege of conducting activities within the forum state and the extent to which subjecting the defendant to jurisdiction is fair and reasonable. Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and World-Wide Volkswagen Corp. v. Woodson.[2]
There is no reading of the facts in this case which would allow the conclusion that China Products knowingly and intentionally involved itself in the Florida market or purposely availed itself of the Florida market or the benefits of Florida commerce. It was entirely fortuitous from the perspective of China Products that this chain ended up in Florida and was involved in an accident here. China Products did not undertake a national marketing effort with regard to this chain, and there is no way China Products could have reasonably anticipated being haled into court in Florida. We find the trial court erred in its finding that Florida acquired personal jurisdiction over appellant.
REVERSED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] Understandably, appellees have made no attempt to show that China Products either serviced or manufactured the chain. We note further that appellees have cited no authorities supporting their contention that the term "processed," as used in the statute, embraces activities such as those engaged in by China Products with respect to the chain in question.
[2] Very recently, the District Court of the Southern District of Florida, faced with a remarkably similar case, Tomashevsky v. Komori Printing Machinery Co., Ltd., 691 F. Supp. 336 (S.D.Fla. 1988), rendered a decision which lends support to our resolution of the case before us. In that case the federal court concluded that an importer of printing presses which maintained no offices in Florida, which sold printing presses to independent dealers which were located throughout the United States but none of which were located in Florida, which engaged in no advertising whatsoever for printing presses in Florida, and which sold the printing press to a dealer in a foreign state but took no part of the ultimate sale of the product to a Florida purchaser, could not be subjected to suit in Florida.