OPINION OF THE COURT
Barbara R. Kapnick, J.
Plaintiffs in this action seek a declaration regarding their *469 obligations and the obligations of various insurers to indemnify defendant Foster Wheeler Corporation for asbestos-related bodily injury losses. Each of the defendant insurance companies allegedly issued one or more liability insurance policies to Foster Wheeler between 1951 and 1981.
Defendants New Jersey Property-Liability Insurance Guaranty Association Act (NJPLIGA) and New Jersey Surplus Lines Insurance Guaranty Fund (NJSLIGF) are private, nonprofit, unincorporated legal entities created pursuant to the provisions of the New Jersey Property-Liability Insurance Guaranty Association Act (NJ Stat Ann § 17:30A-1 et seq.) and the New Jersey Surplus Lines Insurance Guaranty Fund Act (NJ Stat Ann § 17:22-6.70 et seq.), respectively.
NJPLIGA is intended to provide a mechanism for the payment of statutorily defined “covered claims” (to a statutory limit) made by a party under an insurance policy issued to it by a licensed New Jersey insurer who has been declared insolvent. NJSLIGF is intended to provide a mechanism for the payment of statutorily defined “covered claims” (to a statutory limit) made by a party under a Surplus Lines insurance policy issued to it by a licensed New Jersey insurer who has been determined to be insolvent. Pursuant to New Jersey Statutes Annotated § 17:30A-8 (2) and § 17:22-6.74 (2), respectively, NJPLIGA and NJSLIGF are “deemed the insurer [s] to the extent of [their] obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.”
NJPLIGA and NJSLIGF were named as defendants to this lawsuit because certain insurers which issued liability policies to Foster Wheeler Corporation — i.e., Integrity Insurance Company, Midland Risk Insurance Company, Mission American Insurance Company and Pine Top Life Company — have all been declared insolvent.
Defendants NJPLIGA and NJSLIGF now move for an order dismissing plaintiffs’ complaint against them for lack of personal long-arm jurisdiction (CPLR 302) on the grounds that (i) they do not transact any business in New York; (ii) neither of them maintains an agent for service of process in New York; (iii) neither of them owns any property in New York; and (iv) New York has no interest in resolving or enforcing issues related to the New Jersey guaranty association laws, which are *470 only designed to protect insureds in New Jersey.* (See, Rhulen Agency v Alabama Ins. Guar. Assn., 715 F Supp 94 [SD NY 1989], affd on other grounds 896 F2d 674 [2d Cir 1990].)
Plaintiffs argue that (i) the ruling in Rhulen should not be considered since the Court of Appeals, Second Circuit, found that the District Court “mistakenly passed” (896 F2d at 678) on the personal jurisdiction issue, (ii) even if Rhulen is considered, both the reason behind the creation of the guaranty funds and statutory language demonstrate an intent for the funds to be subject to suit in foreign jurisdictions, and (iii) New York has a substantial interest in this litigation because the insurance policies at issue, including those issued by the insolvent insurer members of the Funds, were negotiated and brokered in New York and the contracting party, Foster Wheeler, was incorporated in New York during the time the subject policies were issued.
In Rhulen, the District Court dismissed an action against various state guaranty associations, including NJPLIGA, for lack of personal long-arm jurisdiction. The Second Circuit affirmed the dismissal of the action, but found that the District Court should have dismissed the case for lack of subject matter jurisdiction and thus should not have reached the question of personal jurisdiction.
One New York State court nonetheless relied in part on the District Court’s reasoning in Rhulen and dismissed an action against the New Hampshire Insurance Guaranty Association for lack of personal long-arm jurisdiction (see, Pitco Frialator v Guaranty Fund Mgt. Servs., 155 Misc 2d 953 [Sup Ct, Erie County 1992]). However, the Court of Appeals, Eleventh Circuit, ruling in Olivier v Merritt Dredging Co. (979 F2d 827 [11th Cir 1992], cert denied 508 US 910 [1993]), rejected the reasoning of the District Court in Rhulen, finding that “[i]n forming the state insurance guaranty associations to avoid federal legislation creating a national guaranty fund, the insurance industry had to anticipate that guaranty associations would be haled into the same courts where their insolvent members would have been subject to the reach of due process.” (Olivier at 833; see also, Ruetgers-Nease Chem. Co. v Firemen’s *471 Ins. of Newark, 236 NJ Super 473, 478, 566 A2d 227, 229 [1989] [court found that the Pennsylvania Guaranty Association could have “reasonably anticipate(d) being haled into court in appropriate foreign jurisdictions”].)
More recently, however, courts in other states have declined to follow the blanket approach taken by the Eleventh Circuit (see, General Elec. Co. v California Ins. Guar. Assn., 997 SW2d 923 [Tex Ct App 1999]; Texas Prop. & Cas. Ins. Guar. Assn. v Boy Scouts of Am., 947 SW2d 682 [Tex Ct App 1997]; Pennsylvania Health & Life Ins. Guar. Assn. v Superior Ct., 22 Cal App 4th 477, 27 Cal Rptr 2d 507 [4th Dist 1994]). They have noted that although a guaranty association stands in the shoes of an insurer for some purposes, the extent of the association’s liability “is strictly limited to statutorily defined ‘covered claims’ and therefore its obligations are not necessarily coextensive with the insolvent insurer.” (Pennsylvania Health & Life Ins. Guar. Assn. v Superior Ct., supra, 22 Cal App 4th at 485-486, 27 Cal Rptr 2d at 513.)
This court agrees with those state courts’ determinations that a guaranty association does not automatically stand “in the shoes of an * * * insurer for the purpose of personal jurisdiction.” (Texas Prop. & Cas. Ins. Guar. Assn. v Boy Scouts of Am., supra at 687.)
Rather, in order to subject a guaranty association — such as the moving defendants herein — to the jurisdiction of this court, plaintiff must establish that NJPLIGA and NJSLIGF have purposefully established “minimum contacts” in New York. (Asahi Metal Indus. Co. v Superior Ct. of Cal., 480 US 102, 109 [1987]; see also, Burger King Corp. v Rudzewicz, 471 US 462 [1985].)
“[Although foreseeability is a factor to consider in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction,” absent some showing that the defendant associations took an action “purposefully directed” toward this state. (General Elec. Co. v California Ins. Guar. Assn., supra at 929; see also, Texas Prop. & Cas. Ins. Guar. Assn. v Boy Scouts of Am., supra at 688.) Plaintiffs have failed to make any such showing in this case.
Accordingly, based on the papers submitted and the oral argument held on the record on April 24, 2002, this motion by defendants NJPLIGA and NJSLIGF for an order dismissing plaintiffs’ complaint against them for lack of personal jurisdiction is granted.
The clerk may enter judgment dismissing plaintiffs’ complaint against defendants New Jersey Property-Liability *472 Insurance Guaranty Association and New Jersey Surplus Lines Insurance Guaranty Fund only without prejudice and without costs and disbursements.
Plaintiffs’ claims against the codefendants are severed and continued.

 Foster Wheeler Corporation filed an action for declaratory relief in the Superior Court of New Jersey related to the policies at issue in this matter. However, that action was stayed pending the outcome of this action, pursuant to the decision dictated on the record by the Honorable Edmund R. Bern-hard of the Superior Court of New Jersey, Hunterdon County, on June 15, 2001.