Justice Breyer,
with whom Justice Alito joins,
concurring in the judgment.
The Supreme Court of New Jersey adopted a broad understanding of the scope of personal jurisdiction based on its view that “[t]he increasingly fast-paced globalization of the world economy has removed national borders as barriers to trade.” Nicastro v. McIntyre Machinery America, Ltd., 201 N. J. 48, 52, 987 A. 2d 575, 577 (2010). I do not doubt that there have been many recent changes in commerce and communication, many of which are not anticipated by our precedents. But this case does not present any of those issues. So I think it unwise to announce a rule of broad applicability without full consideration of the modern-day consequences.
In my view, the outcome of this case is determined by our precedents. Based on the facts found by the New Jersey . courts, respondent Robert Nicastro failed to meet his burden to demonstrate that it was constitutionally proper to exercise jurisdiction over petitioner J. McIntyre Machinery, Ltd. (British Manufacturer), a British firm that manufactures *888 scrap-metal machines in Great Britain and sells them through an independent distributor in the United States (American Distributor). On that basis, I agree with the plurality that the contrary judgment of the Supreme Court of New Jersey should be reversed.
I
In asserting jurisdiction over the British Manufacturer, the Supreme Court of New Jersey relied most heavily on three primary facts as providing constitutionally sufficient “contacts” with New Jersey, thereby making it fundamentally fair to hale the British Manufacturer before its courts: (1) The American Distributor on one occasion sold and shipped one machine to a New Jersey customer, namely, Mr. Nieastro’s employer, Mr. Curdo; (2) the British Manufacturer permitted, indeed wanted, its independent American Distributor to sell its machines to anyone in America willing to buy them; and (3) representatives of the British Manufacturer attended trade shows in “such cities as Chicago, Las Vegas, New Orleans, Orlando, San Diego, and San Francisco.” Id., at 54-55, 987 A. 2d, at 578-579. In my view, these facts do not provide contacts between the British firm and the State of New Jersey constitutionally sufficient to support New Jersey’s assertion of jurisdiction in this case.
None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient. Rather, this Court’s previous holdings suggest the contrary. The Court has held that a single sale to a customer who takes an accident-causing product to a different State (where the accident takes place) is not a sufficient basis for asserting jurisdiction. See World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286 (1980). And the Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the *889 stream of commerce, fully aware (and hoping) that such a sale will take place. See Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U. S. 102, 111, 112 (1987) (opinion of O’Connor, J.) (requiring “something more” than simply placing “a product into the stream of commerce,” even if defendant is “awar[e]” that the stream “may or will sweep the product into the forum State”); id., at 117 (Brennan, J., concurring in part and concurring in judgment) (jurisdiction should lie where a sale in a State is part of “the regular and anticipated flow” of commerce into the State, but not where that sale is only an “edd[y],” i. e., an isolated occurrence); id., at 122 (Stevens, J., concurring in part and concurring in judgment) (indicating that “the volume, the value, and the hazardous character” of a good may affect the jurisdictional inquiry and emphasizing Asahi’s “regular course of dealing”).
Here, the relevant facts found by the New Jersey Supreme Court show no “regular... flow” or “regular course” of sales in New Jersey; and there is no “something more,” such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey. He has introduced no fist of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British Manufacturer “purposefully avail[ed] itself of the privilege of conducting activities” within New Jersey, or that it delivered its goods in the stream of commerce “with the expectation that they will be purchased” by New Jersey users. World-Wide Volkswagen, supra, at 297-298 (internal quotation marks omitted).
There may well have been other facts that Mr. Nicastro could have demonstrated in support of jurisdiction. And the dissent considers some of those facts. See post, at 895 (opinion of Ginsburg, J.) (describing the size and scope of New Jersey’s scrap-metal business). But the plaintiff bears *890 the burden of establishing jurisdiction, and here I would take the facts precisely as the New Jersey Supreme Court stated them. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U. S. 694, 709 (1982); Blakey v. Continental Airlines, Inc., 164 N. J. 38, 71, 751 A. 2d 538, 557 (2000); see 201 N. J., at 54-56, 987 A. 2d, at 578-579; App. to Pet. for Cert. 128a-137a (trial court’s “reasoning and finding(s)”).
Accordingly, on the record present here, resolving this case requires no more than adhering to our precedents.
II
I would not go further. Because the incident at issue in this case does not implicate modern concerns, and because the factual record leaves many open questions, this is an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules.
A
The plurality seems to state strict rules that limit jurisdiction where a defendant does not “inten[d] to submit to the power of a sovereign” and cannot “be said to have targeted the forum.” Ante, at 882. But what do those standards mean when a company targets the world by selling products from its Web site? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders? And what if the company markets its products through popup advertisements that it knows will be viewed in a forum? Those issues have serious commercial consequences but are totally absent in this case.
B
But though I do not agree with the plurality’s seemingly strict no-jurisdiction rule, I am not persuaded by the absolute approach adopted by the New Jersey Supreme Court and urged by respondent and his amici. Under that view, *891 a producer is subject to jurisdiction for a products-liability action so long as it “knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.” 201 N. J., at 76-77, 987 A. 2d, at 592 (emphasis added). In the context of this case, I cannot agree.
For one thing, to adopt this view would abandon the heretofore accepted inquiry of whether, focusing upon the relationship between “the defendant, the forum, and the litigation,” it is fair, in light of the defendant’s contacts with that forum, to subject the defendant to suit there. Shaffer v. Heitner, 433 U. S. 186, 204 (1977) (emphasis added). It would ordinarily rest jurisdiction instead upon no more than the occurrence of a product-based accident in the forum State. But this Court has rejected the notion that a defendant’s amenability to suit “travel[s] with the chattel.” World-Wide Volkswagen, 444 U. S., at 296.
For another, I cannot reconcile so automatic a rule with the constitutional demand for “minimum contacts” and “pur-posefu[l] avail[ment],” each of which rests upon a particular notion of defendant-focused fairness. Id., at 291, 297 (internal quotation marks omitted). A rule like the New Jersey Supreme Court’s would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue. What might appear fair in the ease of a large manufacturer which specifically seeks, or expects, an equal-sized distributor to sell its product in a distant State might seem unfair in the ease of a small manufacturer (say, an Appalachian potter) who sells his product (cups and saucers) exclusively to a large distributor, who resells a single item (a coffee mug) to a buyer from a distant *892 State (Hawaii). I know too little about the range of these or in-between possibilities to abandon in favor of the more absolute rule what has previously been this Court’s less absolute approach.
Further, the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain. I am again less certain than is the New Jersey Supreme Court that the nature of international commerce has changed so significantly as to require a new approach to personal jurisdiction.
It may be that a larger firm can readily “alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.” World-Wide Volkswagen, swpra, at 297. But manufacturers come in many shapes and sizes. It may be fundamentally unfair to require a small Egyptian shirtmaker, a Brazilian manufacturing cooperative, or a Kenyan coffee farmer, selling its products through international distributors, to respond to products-liability tort suits in virtually every State in the United States, even those in respect to which the foreign firm has no connection at all but the sale of a single (allegedly defective) good. And a rule like the New Jersey Supreme Court suggests would require every product manufacturer, large or small, selling to American distributors to understand not only the tort law of every State, but also the wide variance in the way courts within different States apply that law. See, e. g., Dept, of Justice, Bureau of Justice Statistics Bulletin, T. Cohen, Tort Trials and Verdicts in Large Counties, 2001, p. 11 (NCJ 206240,2004) (reporting percentage of plaintiff winners in tort trials among 46 populous counties, ranging from 17.9% (Worcester, Mass.) to 69.1% (Milwaukee, Wis.)).
C
At a minimum, I would, not work such a change to the law in the way either the plurality or the New Jersey Supreme Court suggests without a better understanding of the rele *893 vant contemporary commercial circumstances. Insofar as such considerations are relevant to any change in present law, they might be presented in a case (unlike the present one) in which the Solicitor General participates. Cf. Tr. of Oral Arg. in Goodyear Dunlop Tires Operations, S. A. v. Brown, O. T. 2010, No. 10-76, pp. 20-22 (Government declining invitation at oral argument to give its views with respect to issues in this case).
This case presents no such occasion, and so I again reiterate that I would adhere strictly to our precedents and the limited facts found by the New Jersey Supreme Court. And on those grounds, I do not think we can find jurisdiction in this case. Accordingly, though I agree with the plurality as to the outcome of this case, I concur only in the judgment of that opinion and not its reasoning.