WILLIAMS, Senior Circuit Judge,
with
whom
Senior Circuit Judge RANDOLPH joins, concurring:
I concur in the court’s opinion and judgment but write separately to express concern about our decision in TMR Energy v. State Property Fund of Ukraine, 411 F.3d 296 (D.C.Cir.2005), which extended First National City Bank v. Banco Para el Comercio Exterior de Cuba (“Bancec”), 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983), to a wholly new domain. The result was to constitutionalize an issue quite unnecessarily.
In Bancec the Court considered whether a U.S. firm, sued in New York by a bank wholly owned by the Cuban government, could claim as a “set off” the losses inflicted on it by the Cuban government’s seizure of its Cuban assets. The Court held that it could do so, invoking a set of corporate veil-piercing principles. While “government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such,” 462 U.S. at 626-27, 103 S.Ct. 2591, that norm could be overcome under a variety of circumstances — namely, where the “corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created,” id. at 629, 103 S.Ct. 2591, and where honoring the distinction “would work fraud or injustice” or “defeat legislative policies,” id. at 629-30, 103 S.Ct. 2591.
At the time we decided TMR, three arguably relevant lines of authority were outstanding. First was Bancec’s veil-piercing decision in the context of U.S. firms’ efforts to set off foreign states’ obligations against claims by a state-owned entity. Second was our own decision in Price v. Socialist People’s Libyan Arab Jamahiriya, 294 F.3d 82 (D.C.Cir.2002), holding that a foreign state was not a “person” for purposes of the due process clause and its requirement of “minimum contacts” for personal jurisdiction. In doing so we pointed out that foreign states were the juridical equals of the United States, and that if a state perceived that it had been improperly dragged into a U.S. court, it would have available to it “a panoply of mechanisms in the international arena through which to seek vindication or *818 redress.” Id. at 98. Given that the federal courts themselves had “relied on principles of comity and international law to protect foreign governments in the American legal system,” id. at 97, we held that “[t]hese mechanisms [the ones available to foreign states in the international arena], not the Constitution, set the terms by which sovereigns relate to one another,” id. at 98 (emphasis added).
Third were Supreme Court applications of the due process clauses’ “minimum contacts” analysis to private foreign corporations in determining whether they could be subject to U.S. courts’ jurisdiction. See, e.g., Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
In TMR Energy we noted both (1) that the cases applying minimum contacts analysis to foreign corporations appeared to rest on a hitherto unchallenged assumption of the due process clauses’ applicability, and (2) that in light of decisions by this court and the Supreme Court that aliens without property or presence in the United States do not receive constitutional protections, see, e.g., United States v. Verdugo-Urquidez, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), it was “far from obvious that [a wholly independent foreign state-owned corporation] would be entitled to the protection of the fifth amendment.” 411 F.3d at 302 n. *. But, partly because of TMR’s failure to argue the point and partly because of the approach we took (finding against the foreign entity on other grounds, described below), we had no need to resolve either point.
Instead, we looked at the foreign entity in question through the lens of Bancec. We posed the question “whether the SPF [the State Property Fund of Ukraine] has a constitutional status different from that of the State of Ukraine.” Id. at 301. Finding that “the State of Ukraine had plenary control over the SPF,” we ruled that the SPF, “like its principal ... is not a ‘person’ for purposes of the due process clause and cannot invoke the minimum contacts test to avoid the personal jurisdiction of the district court.” Id. at 301-02.
But we never really explained the metamorphosis of Bancec, which arose as the solution to a set-off issue, into a constitutional doctrine for foreign state-owned entities. That extension yields several anomalies. While Bancec explicitly took note of “legislative policies,” 462 U.S. at 630, 103 S.Ct. 2591, constitutionalization of the issue of suing foreign state-owned corporations stands as a potential obstacle to solutions that Congress might find sensible. Our own decision in Price, noting the availability of diplomatic measures, invites us as a country (courts as well as the political branches) to take note of the behavior of foreign states and the structure of international relations. Some countries have adopted “statutes that authorize their courts to exercise jurisdiction over a foreign defendant whenever the defendant’s nation would do the same in analogous situations.” Austen L. Parrish, Sovereignty, Not Due Process: Personal Jurisdiction over Nonresident Alien Defendants, 41 Wake Forest L. Rev. 1, 49 (2006). A U.S. statute mimicking such foreign solutions, however sensible as a negotiating strategy, would run afoul of TMR’s constitutionalization of the issue — as applied, for instance, to corporations of a state that allowed suits against our corporations regardless of minimum contacts. State-owned corporations, of course, will often have access to the diplomatic mechanisms alluded to in Price, and their use of that access might well precipitate the sort of negotiated solutions contemplated there.
More generally, we reasoned in Price that extending due process protections to foreign states would “frustrate the United States government’s clear statutory command” to subject foreign states to the *819 jurisdiction of the federal courts under some circumstances. 294 F.3d at 98-99. In the Foreign Sovereign Immunities Act Congress defined circumstances when foreign states and their instrumentalities maybe subject to the jurisdiction of United States courts, see 28 U.S.C. §§ 1602, 1605, and it is not at all clear why that determination should not be given full effect.
These concerns suggest that in a suitable case it may be valuable for courts to reconsider both the merits of the assumption in Asahi Metal and kindred cases that private foreign corporations deserve due process protections, and (perhaps more significantly) the application of that assumption to entities owned by a foreign state but not subject to the state’s plenary control or otherwise treated as a state.
This said, if the Supreme Court were to find the due process clauses inapplicable to the question of jurisdiction over private foreign corporations, or if we were to do the same for state-owned but not state-equivalent entities, it would not follow ineluctably that they could henceforth be exposed to the United States courts’ jurisdiction regardless of minimum contacts. Quite apart from the instances where the FSIA itself imposes requirements substantially equivalent to minimum contacts, see 28 U.S.C. § 1605(a)(2); see also S & Davis Intern., Inc. v. Republic of Yemen, 218 F.3d 1292, 1304 (11th Cir.2000) (noting similarity of the standards), courts might well extend the current practice on the ground of its substantial duration (most clearly in the case of private corporations), but subject to any congressional provisions to the contrary. Such an approach would be quite different from the constitutional straightjacket that appears to prevail currently.