[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
On March 28, 1991, the plaintiffs, Robert Shopey III ("Robby"), Rebecca Shopey, Ashley Shopey, and Robert Shopey filed a fifty-four count, eighty-nine page complaint against, inter alia, Fair's Wood Service ("Fair"), a defendant. The plaintiffs allege, inter alia, that on July 4, CT Page 554 1990, Robby, and Ashley, both minors, and their mother, Rebecca Shopey, were spectators in a crowd at the Independence Day fireworks display at Fuessenich Park in Torrington, Connecticut. The plaintiffs claim that, during the "grand finale" of the fireworks display, a sequence of events transpired, resulting in a mortar shell being fired into the crowd of spectators.
The plaintiffs further allege, inter alia, that Robby, Ashley and Rebecca all suffered substantial injuries as a result of this sequence of events, and that Robert Shopey, the father of Robby and Ashley, the husband of Rebecca, and a Torrington police officer, was dispatched to Fuessenich Park with regard to the fireworks incident. The plaintiffs claim that when Officer Shopey arrived he was confronted by the appearance of his seriously injured son, daughter, and wife, resulting in severe emotional distress.
The plaintiffs assert in count 19 that Fair, a sole proprietorship organized and existing under laws of the State of Pennsylvania, was engaged in the business of producing, manufacturing, distributing and selling, inter alia, mortar racks. The plaintiffs claim that Fair produced, manufactured, distributed and sold the mortar rack used in the Fuessenich Park fireworks display, and that said rack was used in the firing of the mortar shell involved in the aforementioned incident. The plaintiff, further contend that this mortar rack was expected to and did reach Fuessenich Park without substantial change in the condition in which it was sold, and that it was in substantially the same condition at the time of the incident. Consequently, the plaintiffs claim that Fair is liable to the plaintiffs pursuant to General Statutes 52-572m because the rack was in a dangerous and defective condition due to a defect in design and/or manufacture.
On May 21, 1991, defendant Fair filed a motion claiming that this court lacks personal jurisdiction over it. On November 21, 1991, the plaintiffs filed a memorandum in opposition to the defendant's motion to dismiss.
The motion to dismiss is the proper manner by which to assert lack of jurisdiction over the person. Practice Book 143. See also, Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53 (1983). When the defendant challenges the court's jurisdiction over him, "it is then incumbent on the plaintiff to prove the facts establishing the requisite minimum contacts [required by due process]." Jowdy, supra.
In its memorandum in support of its motion to dismiss, the defendant claims that General Statutes 52-59b, Connecticut's long-arm statute does not confer upon this court jurisdiction over the person of the defendant. The defendant also asserts that it lacks the minimum contacts required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that, accordingly, dismissal is warranted.
The plaintiff, in its memorandum in opposition to the motion to dismiss, claims that in personam jurisdiction does exist pursuant to General CT Page 555 Statutes 52-59b(a)(3), and that such a determination would not offend the Fourteenth Amendment to the United States Constitution.
General Statutes 52-59b(a)(3) states, in pertinent part:
 As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent . . .commits a tortious act outside the state causing injury to person or property within the state . . . if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .
Id.
In interpreting General Statutes 52-59b, the Connecticut courts are permitted to look to interpretation of New York Civil Practice Law 302. Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179 (1981). New York courts have interpreted "substantial revenue" so as not to require "any connection between the tortious act committed outside the state and the deriving of revenue from goods used in [Connecticut] or [in the case of (52-59b(a)(3)(B)] from interstate . . . commerce . . . ." Gilmore v. J.S. Inskip, Inc., 282 N.Y.S.2d 127, 132 (1967). Additionally, the defendant need not make gross sales in either the forum state or in interstate commerce. Gilmore, supra. Thus, if the defendant "received `substantial revenue' from goods used in . . . interstate commerce . . . the statute subjects it to personal jurisdiction." Id. The American Heritage Dictionary 1213 (2d College Ed. 1982) defines "substantial" as "[o]f, pertaining to, or having substance: material; considerable in . . . value . . . [or] amount. . . ." Id. The "substantial revenue" provisions of CPLR 302(a)(3) are:
 predicated on the concept that one who derives substantial revenue from goods used or consumed or services rendered in the state has sufficient contact with the state to sustain jurisdiction of an action to recover for an injury to person or property occurring within the state as a result of a tortious act committed by the defendant outside this state. Similarly . . . one who derives substantial revenue from interstate . . . commerce, even though it does not include substantial revenue to him from goods used or services rendered in New York, nonetheless has sufficient contact with New York to sustain jurisdiction of such an action if he expects or should reasonably expect that his tortious act outside New York will have New York consequences. CT Page 556
Gilmore, supra at 134-35.
In his affidavit attached to his motion to dismiss, defendant Rick Fair states that his "gross income for 1990 was $180,000.00, one-third of which related to the wood shop business." Affidavit of Rick Fair, Paragraph 1. Mr. Fair continues, stating that "approximately 15% of [his] total gross business income was derived from the sale of finale racks and related items to the Vitale Fireworks Manufacturing Company. . . ." Id. at paragraph 4. Additionally, Mr. Fair's Purchase Order 6230, attached as Exhibit B to the plaintiff's memorandum in opposition to the motion to dismiss, shows that Vitale Firework Manufacturing Company, Inc. ("Vitale") purchased items from Fair's Services totaling $54,179.00. Vitale, a co-defendant in this case, is a Pennsylvania corporation which allegedly produced, manufactured, distributed and sold fireworks, shells, mortar tubes, and/or mortar tube plugs used at the Fuessenich Park fireworks display at issue. Furthermore, Exhibit C, Purchase Order #6156, demonstrates that additional income was obtained by Fair from Vitale.
Assuming that Fair's gross income was, indeed, $180,000.00. Affidavit of Rick Fair, supra, Vitale's purchases through purchase order #6230 alone accounted for approximately thirty (30) percent of Fair's total gross income, and ninety (90) percent of Fair's wood shop business. Affidavit of Rick Fair, Paragraphs 1, 4. It should be noted that based upon Mr. Fair's affidavit, these figures are inaccurate, as purchase order 6230, supra, represents a figure approximately twice the amount Mr. Fair states he received from Vitale for all of 1990. Affidavit of Rick Fair, Paragraph 4.
Pursuant to Johnson, supra, it is not necessary that Fair's services derived revenue from transactions directly with the forum state, Connecticut. Rather, it is sufficient that Fair's Services received revenue via interstate forum actions transacted by Vitale. See also Gilmore, supra at 134-35. Finally, pursuant to an evaluation of N.Y. CPLR 302 (McKinney C302:24), the defendant need not foresee the possibility of an accident in Connecticut.
In applying the aforementioned standards to this matter, the defendant has derived substantial revenue from goods used, or services rendered, either in Connecticut or in interstate commerce. Specifically, the figures represented in purchase order 6230 alone, supra, constitute almost thirty (30) percent of Mr. Fair's stated gross income for 1990. This represents substantial revenue. Thus, the defendant falls within the purview of General Statutes 52-59b(a)(3) and, this court, in accordance with Connecticut's long arm statute, has jurisdiction over the defendant. Consequently, the only matter left for this court to consider is whether the exercise of in personam jurisdiction violates the Fourteenth Amendment to the United States Constitution.
In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, ___,62 L.Ed.2d 490, 498, 100 S.Ct. 559, ___ (1980) citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L.Ed. 95, ___, 66 S.Ct. 154, CT Page 557 ___, (1954), the Supreme Court determined that "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist `minimum contacts' between the defendant and the forum state." The court continued, stating that:
 The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects a defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the states, through their courts do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
Id.
Indeed, the essential concerns with regard to "minimum contacts" are whether the relationship "between the defendant and the forum [is] such that it is `reasonable . . . to require the corporation to defend the particular suit which is brought there,'" id. (quoting International Shoe Co., supra at 317,) and whether "the maintenance of the suit [within the forum state] offends `traditional notions of fair play and substantial justice." International Shoe Co., supra.
In Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102, 94 L.Ed.2d 92, 107 S.Ct. 1026 (1987), the Supreme Court determined that a state court's exercise of personal jurisdiction over a Japanese company which made and sold parts for products manufactured outside of, but sold within the United States, violates due process. However, this determination was predicated upon the notions of fair play and substantial justice with regard to requiring a Japanese company to litigate the matter in the United States. In a concurring opinion joined by three other justices, Mr. Justice Brennan stated that the facts found by the California court supported a finding of minimum contacts between the company and the state. Justice Brennan stated that while the company did not design or control the system of distribution that brought its valve assemblies to California, the company was aware of the distribution system's operation and knew that it would benefit economically from the sale in California of products incorporating its components. Thus, Justice Brennan found that as long as a participant in the stream of commerce was aware that his final product was being marketed in the forum state, the possibility of a suit in that forum state could not be a surprise. Id. See also McClung v. Super Glue Corporation, 16 Conn. Law Trib. No. 39, p. 35 (D.Conn. 1990).
Justice Brennan's reasoning was followed in McClung, in which the defendant maintained that it did not transact business in Connecticut, had never shipped its product to Connecticut, and had no knowledge that its product would be shipped to Connecticut. The court, Dorsey, J., relying upon Woodson, found that it had jurisdiction over the defendant. The court stated that "if the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the CT Page 558 manufacturer or distributor to serve the market for its product in other states, it is not unreasonable to subject it to suit in one of those states if its defective merchandise has there been the source of injury to its owner or others." McClung, supra (citing Woodson, supra). The court continued, stating that "[d]ue process is not violated if a forum state exercises jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." McClung, supra.
In applying the aforementioned reasoning to the facts of this case, defendant Fair was aware, or should have been aware, that his final manufactured product was being marketed in Connecticut and, consequently, the possibility of a suit in this state could not be a surprise. McClung, supra. Defendant Fair had developed a business relationship with defendant Vitale. Plaintiff's Exhibit B. See also Affidavit of Rick Fair, Paragraph 8, in which Mr. Fair states that he has done business with Vitale for eleven years. Furthermore, Mr. Fair had purchased fireworks from, and was trained in their use by, Vitale. Plaintiffs' Exhibits E, F. Vitale's services have been used, inter alia, in every state east of the Mississippi River, Plaintiffs' Exhibit D, Paragraph 15 (emphasis added), and, Vitale maintains, the only mortar racks it has purchased since 1980 have come from defendant Fair, Id. at Paragraph 4. Furthermore, Vitale advertises its services and the scope thereof extensively. Id. at Paragraph 16, and maintains that, contrary to the assertions contained in Mr. Fair's affidavit, Vitale had informed Mr. Fair of the scope of its business. Plaintiffs' Exhibit D, Paragraph 19.
Thus, in applying the McClung analysis to the present case, it is reasonable for the defendant to assume that Connecticut would fall within the scope of Vitale's market. Consequently, pursuant to McClung, defendant Fair should reasonably have known that its products would be used in Connecticut, and the exercise of in personam jurisdiction over defendant Fair would not violate the due process clause of the Fourteenth Amendment to the Constitution. Thus, the motion to dismiss is denied.
PICKETT, J.