THE STATE OF NEVADA, DEPARTMENT OF COMMERCE, DIVISION OF INSURANCE, Appellant, v. INTEROCEAN RISK SYSTEMS, INC., MICHAEL EISENSTADT, KEVIN URBINE, ROBERT URBINE, L.T.A. INSURANCE BROKERS, INC., SILVERADO AVIATION AND MARINE, INC., and UNIFIED ASSURANCE AND CASUALTY COMPANY, Respondents.

No. 23305

July 29, 1993

857 P.2d 3

*Frankie Sue Del Papa,* Attorney General, and *James C. Smith,* Deputy Attorney General, Carson City, for Appellant.

*Leverty & Associates,* Reno, for Respondents.

## OPINION

*Per Curiam:*

After a hearing before the Department of Commerce, Division of Insurance ("Insurance Division"), the respondents, Interocean Risk Systems, Inc. ("Interocean"), Michael Eisenstadt, Kevin Urbine, Robert Urbine, L.T.A. Insurance Brokers, Inc. ("L.T.A."), Silverado Aviation and Marine, Inc. ("Silverado"), and Unified Assurance and Casualty Company ("Unified"), who were not licensed to sell aviation insurance in Nevada, were fined and ordered to cease and desist the unauthorized sale of insurance. On judicial review, the district court vacated the assessment of fines, determining that the Insurance Division exceeded its authority. For reasons hereafter stated, we conclude that the district court erred and reinstate the fines.

### FACTS

This action arose from the unauthorized sale of aviation insurance to Nevada residents by several individuals and companies, including the respondents. On August 22, 1990, the Insurance Division issued an emergency cease and desist order and an order to show cause against the respondents. A hearing was held thereafter by the Insurance Division. The following factual background upon which the Insurance Division's determinations were based was developed at the hearing.

Intrepid Insurance Company ("Intrepid"), a West Virginia company, was formed in 1987 by several individuals, including respondent Robert Urbine.[1] Thereafter, Intrepid began issuing

---

[1]The Intrepid Insurance Company was declared insolvent and seized by the West Virginia Department of Insurance, and is not a party to this appeal. However, it was represented by counsel at the hearing before the Insurance Division.

aviation insurance policies to Nevada residents through, among others, its vice president, Kevin Urbine. Evidence at the hearing indicated that Kevin Urbine, who had previously been an agent for an authorized Nevada aviation insurer, phoned prospective clients and solicited their business for Intrepid. After a period of time, Robert and Kevin Urbine left Intrepid. Since the Urbines were the only Intrepid agents in Nevada with aviation insurance experience, after their departure Intrepid decided to discontinue the aviation segment of its insurance business. An agreement was reached between Intrepid and Kevin Urbine authorizing the latter to solicit the business of Intrepid's aviation policy holders. Thereafter, Intrepid sent notices to all of its Nevada aviation policy holders informing them that their policies were to be cancelled within days.

After leaving Intrepid, Robert Urbine became the president of L.T.A. In his affidavit introduced at the hearing, Robert Urbine attested to placing former Intrepid aviation policy holders with Unified.[2] In addition, Kevin Urbine and/or Robert Urbine contacted all of the past Intrepid aviation policy holders within Nevada for the purpose of selling them insurance contracts. At the hearing, evidence was introduced indicating that Kevin Urbine had in fact sold aviation insurance policies to citizens of Nevada. In addition, the evidence reflected that Eisenstadt had participated in unauthorized insurance transactions as the president of Interocean, the corporate owner of Unified.

After the hearing, the hearing officer issued a cease and desist order, finding that all of the respondents had participated in the unauthorized sale of insurance within Nevada. In addition, Intrepid was fined $610,000 ($10,000 per policy) for the unauthorized sale of insurance. Robert Urbine, Kevin Urbine and Eisenstadt were each fined $75,000 for transacting insurance business as an insurer and for transacting insurance business as an agent without a license. Unified was also fined $150,000 for transacting insurance in Nevada without a certificate of authority. Eisenstadt and Silverado were each fined an additional $1,000 for acting as adjusters without a license in violation of the provisions of Chapter 684A.

Respondents filed a petition for judicial review, which was granted by the district court. After a hearing, the district court

---

[2]Through a somewhat complicated arrangement, Eisenstadt controls Interocean, Unified, and Silverado.

Eisenstadt is the president and sole shareholder of Interocean. Interocean is the parent company of Unified, which is domiciled in the British West Indies and maintains an office in Carson City, Nevada. Eisenstadt is also the president of Silverado, which acts as the manager and administrator for Unified's aviation business.

determined that "[t]he legislature has shown no intent to give the Insurance Commissioner the authority to impose fines for unauthorized insurance acts" under NRS 685B.080. Accordingly, the district court vacated the fines imposed on the respondents by the Insurance Commissioner. This appeal ensued.

## DISCUSSION

Respondents contend that the plain language of the Unauthorized Insurers Act prohibits the Insurance Division from enforcing the Act through an administrative hearing or the imposition of fines. Respondents further argue that their due process rights have been violated. We conclude that the arguments advanced by respondents are without merit.

The Nevada Insurance Code, Title 57 of the Nevada Revised Statutes, was enacted to regulate the transaction of insurance within the State of Nevada. NRS 679A.140 sets forth the purposes of the Insurance Code which, *inter alia,* include protecting policy holders, furthering the public interest and preserving state regulation of insurance. The specific purpose of the unauthorized insurers section, contained in NRS 685B.010, is to vest jurisdiction in the Insurance Commissioner and the courts of this state to enforce the insurance statutes and thereby protect Nevada residents from the threat posed by unlicensed insurance activity.

NRS 679B.310(1) authorizes the Insurance Commissioner to hold hearings for any purpose within the scope of Title 57. Moreover, a reading of the various sections in NRS Chapter 685B indicates that a hearing before the Insurance Commissioner was contemplated by the legislature. *See* NRS §§ 685B.050, 685B.060. We therefore conclude that the Insurance Commissioner had authority to hold a hearing to determine "whether an insurer or an employee of an insurer *has engaged in unsuitable conduct and for any other purpose within the scope of [the insurance] code.*" NRS 679B.310(1) (emphasis added).

Respondents also argue that NRS 685B.080 does not authorize the Insurance Division to assess the penalty provided in that statute.[3] This court has determined, however, that administrative agencies possess those powers which the legislature expressly or impliedly grants. Clark County v. Equal Rights Comm'n, 107 Nev. 489, 492, 813 P.2d 1006, 1007 (1991).

---

[3]NRS 685B.080 provides: "Penalty. Any unauthorized insurer who transacts any unauthorized act of an insurance business as set forth in the Unauthorized Insurers Act may be fined not more than $10,000."

As previously noted, the purpose of Chapter 685B is to "subject certain persons and insurers to the jurisdiction of the commissioner and the courts of this state . . . in any proceeding by the commissioner to enforce or effect full compliance with the insurance laws of this state." NRS 685B.010. Furthermore, the legislature has provided a penalty in NRS 685B.080 for the violation of this chapter. In order to effectively utilize the express powers bestowed upon the Insurance Division, as provided above, the Insurance Commissioner impliedly has the authority to impose the specified fines as a means of enforcing the dictates of the statutes. Any other interpretation would transform the Insurance Division into a watchdog without teeth, dependent upon the district courts for enforcement of the regulatory statutes that have been entrusted to the Insurance Division. Accordingly, the Insurance Division not only had the authority to conduct a hearing in accordance with the relevant statutes, it also had the authority to assess penalties as a means of enforcing Nevada's insurance code and deterring recurring violations of the code.

Finally, respondents contend that their due process rights have been violated because they did not conduct the sale of insurance within Nevada. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The United States Supreme Court has indicated that due process requires the showing of certain minimum contacts so as not to offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Furthermore, the Due Process Clause provides predictability to the legal system so that potential defendants can plan their conduct in order to know the particular forum that will have jurisdiction in the event of litigation. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S. [235,] 253 [(1958)], it has clear notice that it is subject to suit there . . . ." Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 110 (1987) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The United States Supreme Court has determined that jurisdiction is proper where there are minimum contacts between a defendant and the forum state as demonstrated by the defendant's action or conduct which is *purposefully directed toward the forum State.*

*Asahi Metal Industry,* 480 U.S. at 112 (emphasis in original). Furthermore, in determining whether a defendant has the necessary minimum contacts with the forum, the quality and nature, rather than the mere quantity of the contacts, are to be analyzed. *International Shoe,* 326 U.S. at 317-18.

We conclude, as to respondents Eisenstadt, Interocean, Unified and Silverado, that the record reflects the occurrence of significant contacts within the State of Nevada that are fairly attributable to them. Of greatest significance is the fact that these respondents not only transacted business within the State of Nevada, they also maintained a physical presence here through their Carson City office. In addition, at the hearing before the Insurance Commissioner, yellow page advertisements were introduced showing that Interocean was advertising the availability of its services within the State of Nevada. Accordingly, we conclude that these respondents were fully accorded their due process rights by the Insurance Commissioner.

Kevin Urbine, Robert Urbine and L.T.A. acted on behalf of Intrepid as well as Unified in soliciting the purchase of aviation insurance from Nevada residents. In addition, Kevin Urbine was licensed in Nevada at one time, and Robert Urbine was connected with a Reno insurance company prior to his association with Intrepid. The State maintained that the Urbines' insurance experience in Nevada placed them on notice of Nevada's insurance laws. Their conduct was thus pursued in knowing violation of Nevada's statutes relating to insurance. Moreover, the evidence demonstrated that the Urbines had solicited the aviation insurance business of Nevada residents both by telephone and through the U.S. mail. We therefore conclude that the Urbines' contacts with Nevada were significant and that their due process rights were fully satisfied.

For the reasons discussed above, we are persuaded that the Insurance Division had the authority under the insurance code to convene the hearing and impose the fines challenged by respondents. We have also determined that additional issues not addressed are either without merit or need not be discussed given our disposition of this appeal.

The district court's order vacating the fines is reversed and the fines assessed against respondents are hereby reinstated.[4]

---

[4]THE HONORABLE ROBERT E. ROSE, Chief Justice, did not participate in the decision of this appeal.