

# NUMBER 13-08-00528-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MCELROY MACHINE &
MANUFACTURING COMPANY, INC. AND
DVCC SERVICES CORPORATION F/K/A
PREDCO SERVICES CORPORATION                           Appellants,

v.

LUIS BELTRAN FLORES,                                  Appellee.

On appeal from the 404th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Yañez**

In this accelerated interlocutory appeal, appellants, McElroy Machine &

Manufacturing Company., Inc. ("McElroy Machine") and DVCC Services Corporation. f/k/a

Predco Services Corporation ("DVCC"), challenge the trial court's denial of their special

appearance.[1]  Appellee is Luis Beltan Flores.  Because we conclude that the trial court lacked personal jurisdiction over appellants, we reverse the trial court's order and dismiss the case against appellants.

## I. Background

Flores filed suit against McElroy/Catchot Winch Co. ("McElroy/Catchot"), Coastal Marine Equipment, Inc. ("CME"), Ocean Marine, Inc. ("OMI"), Linwood Trawlers, Inc., the M/V Capt. Linwood, Dolby Linwood, and appellants, alleging that he was injured by a defective winch while employed as a seaman on the M/V Capt. Linwood.[2]  Flores sued appellants and OMI for negligence, gross negligence, misrepresentation, and products liability.

Appellants filed a special appearance alleging that the trial court lacked personal jurisdiction over them; appellants attached the affidavits of DVCC's former president, Anthony Frascella, and McElroy Machine's former president, Harold Catchot, to their special appearance.  After a March 24, 2008 hearing, the trial court denied appellants' special appearance.  This appeal ensued.

## II. PERSONAL JURISDICTION

### A. Texas Long-Arm Statute

A Texas court may exercise personal jurisdiction over a nonresident defendant only

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon 2008); TEX. R. APP. P. 28.1.

[2] McElroy/Catchot Winch Co., Coastal Marine Equipment, Inc., Ocean Marine, Inc., Linwood Trawlers, Inc., the M/V Capt. Linwood, and Dolby Linwood are not parties to this appeal.

if jurisdiction is authorized by the Texas long-arm statute.[3]  Although the Texas long-arm statute lists activities that constitute "doing business," this list is not exclusive, and "section 17.042's broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'"[4]  The Due Process Clause of the Fourteenth Amendment allows a Texas court to exercise personal jurisdiction over a nonresident defendant when (1) the nonresident defendant has established minimum contacts with Texas, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."[5]

## B.  Minimum Contacts

A nonresident establishes minimum contacts with Texas by purposefully availing

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008) (permitting Texas courts to exercise personal jurisdiction over nonresident defendants who are doing business in Texas).  The Texas long-arm statute, section 17.042, provides as follows:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> > (1)  contracts by mail or otherwise with a Texas resident and wither party is to perform the contract in whole or in part in this state;
> >
> > (2)  commits a tort in whole or in part in this state; or
> >
> > (3)  recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.*

[4] *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

[5] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795; *see* U.S. CONST. amend. XIV, § 1; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'") (citing *Int'l Shoe*, 326 U.S. at 319).

itself of the privileges and benefits inherent in conducting business in the state.[6] There are at least three aspects of our purposeful availment inquiry.[7] First, only the nonresident defendant's contacts with the forum state are considered and not acts of a third person or another party.[8] Second, the contacts must be purposeful and not "random, isolated, or fortuitous."[9] Finally, the nonresident defendant must have sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction."[10]

A nonresident defendant's contacts with the forum state may create either specific or general jurisdiction.[11] Specific jurisdiction exists if the nonresident defendant purposefully directed his activities at a resident of Texas and the litigation arose from or related to those contacts.[12] In other words, there must be a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation.[13] General jurisdiction exists when the defendant's contacts in the forum are continuous and

---

[6] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575, 578 (Tex. 2007) ("[A] defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction.") (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (2005)); *Michiana*, 168 S.W.3d at 784 ("For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'"); *see Burger King Corp.*, 471 U.S. at 476.

[7] *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 784-85).

[8] *Michiana*, 168 S.W.3d at 785 ("[P]urposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'") (quoting *Burger King Corp.*, 471 U.S. at 475) (internal quotations omitted)).

[9] *Id.*

[10] *Id.*

[11] *Moki Mac*, 221 S.W.3d at 575.

[12] *Id.* at 572-73.

[13] *Id.* at 585 ("[W]e believe that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.").

systematic; therefore, the forum may exercise personal jurisdiction over the nonresident defendant "even if the cause of action did not arise from or relate to activities conducted within the forum state."[14]

## III. STANDARD OF REVIEW

The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute."[15] When a special appearance is filed, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction asserted by the plaintiff.[16] The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony.[17] Whether the trial court has personal jurisdiction over a defendant is a question of law that this Court reviews de novo.[18] "When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer 'all facts necessary to support the judgment and supported by the evidence . . . .'"[19]

## IV. APPELLANTS' SPECIAL APPEARANCE

By their sole issue, appellants contend that they have not established minimum

---

[14] *BMC Software*, 83 S.W.3d at 796.

[15] *Id.* at 793.

[16] *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.–Corpus Christi 2002, pet. dism'd w.o.j.).

[17] TEX. R. CIV. P. 120a(3).

[18] *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794.

[19] *Moki Mac*, 221 S.W.3d at 574 (quoting *BMC Software*, 83 S.W.3d at 795).

5

contacts with Texas and that the exercise of jurisdiction over them does not comport with traditional notions of fair play and substantial justice. Specifically, appellants argue that: (1) Flores did not plead sufficient jurisdictional allegations; (2) there is no basis for specific jurisdiction because appellants' alleged liability does not arise out of and is not related to any activity they conducted in Texas; (3) there is no basis for general jurisdiction because appellants do not have sufficient continuous and systematic contacts with Texas to satisfy due process; and (4) there is "no constitutionally permissible basis to assert personal jurisdiction over [appellants] in this action."

## A. Flores's Jurisdictional Allegations

First, appellants assert that Flores did not plead sufficient jurisdictional allegations. We acknowledge that when the plaintiff fails to plead jurisdictional allegations, the defendant must simply prove nonresidency to sustain its burden; however, we disagree with appellants' assertion that Flores did not plead jurisdictional allegations invoking the long-arm statute.

In his live pleading, Flores alleged that he was injured by a defective winch that was "originally designed, manufactured, assembled, and sold" by McElroy Machine and DVCC. Flores further alleged that appellants were liable for his injuries "under the doctrine of strict product liability" and that appellants "committed acts of omission and commission, which collectively and severally constituted negligence" that were the proximate cause of his injuries and damages. Finally, Flores asserted that Cameron County, Texas, was the "county in which all or a substantial part of the events or omissions giving rise to [his] claim occurred" and that he is a resident of Texas.

6

Liberally construing Flores's pleading,[20] we conclude that Flores's allegations that he suffered an injury in Texas due to a defective winch manufactured by appellants are sufficient to bring appellants under the long-arm statute.[21] Because Flores pleaded sufficient jurisdictional allegations, upon filing their special appearance, appellants assumed the burden of negating all bases of personal jurisdiction.[22]

## B. Basis for Jurisdiction

### 1. General Jurisdiction

McElroy Machine was incorporated under the laws of the state of Mississippi and has never been incorporated under the laws of Texas.[23] DVCC was formerly incorporated under the laws of New Jersey and has not been incorporated under Texas law.[24] Neither McElroy Machine nor DVCC has been registered as a business organization with the Texas Secretary of State, and neither has owned, operated, or managed a place of business, branch office, or division in Texas. McElroy Machine and DVCC have neither owned real property in Texas nor paid income taxes in Texas. None of McElroy Machine

---

[20] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (holding that in determining plea to jurisdiction, pleadings are liberally construed in favor of pleader in assessing whether he has pled sufficient facts to demonstrate trial court's jurisdiction); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2).

[21] We note that although we have concluded that Flores pleaded sufficient allegations under the long-arm statute, the mere allegation that a tort occurred in Texas does not support jurisdiction over a defendant under the Due Process Clause, which requires that the nonresident defendant purposefully avail itself of the forum state's jurisdiction. *See Michiana*, 168 S.W.3d at 788, 791-92 ("Allegations that a tort was committed in Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit. . . . [W]e disapprove of those opinions holding that . . . specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves.").

[22] *See Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *El Puerto*, 82 S.W.3d at 628.

[23] McElroy Machine was merged into DVCC in 1999.

[24] DVCC's corporate structure was terminated by way of corporate dissolution in 2007.

and DVCC's officers or directors have been residents of Texas, and neither McElroy Machine nor DVCC has recruited or trained employees in Texas. There is no evidence that McElroy Machine or DVCC has bank accounts in Texas or has entered a contract in Texas. Furthermore, McElroy Machine has not maintained its records in Texas and has no shareholders in Texas.[25] Under these facts, neither McElroy Machine nor DVCC had the systematic and continuous contacts with Texas sufficient to support general jurisdiction.[26]

Flores argues that Catchot's testimony that he sold products to a Texas corporation and that sales agents for McElroy/Catchot solicited business from a Texas retailer is sufficient to establish personal jurisdiction. However, because Flores's cause of action did not arise from or relate to these alleged activities conducted within Texas, the trial court had personal jurisdiction over appellants only if those contacts between appellants and Texas were continuous and systematic.[27] Catchot testified at his deposition that sales were made to a Texas corporation. According to Catchot, he sold discounted component parts for replacement winches to a Texas dealer. Catchot did not specify whether the sales were made by McElroy Machine or by McElroy/Catchot, and he did not state that DVCC made any sales in Texas.[28] Nevertheless, in their affidavits, Catchot and Frascella stated, "Any business relationships between [McElroy Machine or DVCC] and any Texas

---

[25] We note that Catchot testified that McElroy's records were destroyed by Hurricane Katrina.

[26] *See CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996).

[27] *See BMC Software*, 83 S.W.3d at 796.

[28] Catchot purchased the assets of McElroy Machine in 1999 and formed McElroy/Catchot Winch Company.

8

corporation comprised significantly less than 1% of the total business conducted by [McElroy Machine and DVCC] during the time periods relevant to [Flores's] claims."

The minimum contacts analysis becomes more demanding when determining whether the nonresident defendant has established general jurisdiction with the forum state; the contacts must be "substantial."[29] In other words, when general jurisdiction is alleged, there must be "continuous and systematic contacts" between the nonresident defendant and Texas.[30] In the present case, the business contacts with Texas were sporadic and minimal at best and are insufficient to support general personal jurisdiction.[31] Therefore, we cannot conclude that continuous and systematic contacts between either McElroy Machine or DVCC and Texas were established.[32]

2. Specific Jurisdiction

---

[29] *CSR Ltd.*, 925 S.W.2d at 595.

[30] *Id.*

[31] *See Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 417-18 (Tex. App.–Houston [14th Dist.] 1997, no writ) (finding no general jurisdiction even though nonresident defendant: (1) was authorized to do business in Texas; (2) had a registered agent for service of process in Texas; (3) filed franchise tax returns in Texas; (4) sent barges to Texas ports for over ten years; (5) had contacts with Texas businesses; (6) earned yearly revenue from barges loaded or unloaded in Texas; (7) hired Texas employees; (8) litigated in a Texas court; and (9) had a gross revenue from 1991 to 1993 from barges unloading and loading in Teas between $8,000 and $12,000).

[32] *See Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 411 (1984) (holding that the defendant's contacts with Texas was insufficient to establish general jurisdiction, even though the defendant had negotiated the contract for transportation of the decedent with his employer in Texas, purchased approximately eighty percent of its helicopter fleet from a Texas seller, and sent pilots and other personnel to Texas to be trained); *see also Internet Adver., Inc. v. Accudata, Inc.*, No. 05-09-00405-CV, 2009 Tex. App. LEXIS 8859, at *18 (Tex. App.–Dallas Nov. 18, 2009, no pet.) (mem. op.) (concluding evidence that nonresident defendant "had thirteen customers [in Texas] from which it derived less than one percent of its revenues is simply not sufficient to establish 'continuous and systematic' contacts"); *Arth Brass & Aluminum Castings, Inc. v. Harsco Corp.*, 13-03-323-CV, 2004 Tex. App. LEXIS 681, at *3, 18-20 (Tex. App.–Corpus Christi Jan. 23, 2004, no pet.) (mem. op.) (concluding that the percentage of 1.6 in sales by the nonresident defendant to two Texas companies were minimal and the nonresident defendant did not "continuously and systematically invoke the benefits and protections of the laws of the State of Texas to the extent that it consented to being sued here").

9

Next, appellants assert that Flores has not established that jurisdiction is proper under the stream-of-commerce theory. Appellants argue that they have taken no actions to purposefully avail themselves of the benefits and protections of Texas law. Flores counters that personal jurisdiction attached because it was foreseeable that the winches sold by appellants would reach Texas."[33]

"Merely releasing into the stream of commerce a product that comes to rest in Texas is not sufficient to establish jurisdiction."[34] Placing a product into the stream of commerce without additional conduct indicating an intent to serve the market of the forum state is not an act of the defendant purposefully directed toward the forum state.[35] "Although foreseeability is a factor to consider in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction."[36] There must be some indication that the nonresident defendant intended to serve the Texas market.[37] The stream of commerce theory of jurisdiction is not satisfied by a single sale or a few sales from a nonresident seller because it requires a "stream" and not a "dribble."[38]

---

[33] Flores also argues that Catchot "specifically recognized the names of shrimp boat manufacturers . . . in Cameron County, namely Zimco Marine and Marine Mart, as purchasers of winches from his company." However, Flores does not allege that the winch that allegedly injured him was sold in Texas, and he does not claim that Zimco Marine or Marine Mart built the M/V Capt. Linwood. Therefore, we do not find this argument persuasive. Moreover, upon our review of the record, there is no evidence that the winch that allegedly caused Flores's injury was sold in Texas. The evidence in the record establishes that OMI, an Alabama corporation that built the M/V Capt. Linwood, purchased winches from McElroy Machine in Mississippi. The evidence does not reveal whether the winch located on the M/V Capt. Linwood was actually purchased from either McElroy Machine or DVCC.

[34] *M.G.M. Grand Hotel v. Castro*, 8 S.W.3d 403, 409 (Tex. App.–Corpus Christi 1999, no pet.).

[35] *Asahi Metal Insustry Co. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 112 (1987).

[36] *CSR*, 925 S.W.2d at 595.

[37] *Id.*

[38] *Michiana*, 168 S.W.3d at 786.

Moreover, the mere sale of products by a nonresident defendant to a Texas resident is not sufficient to confer jurisdiction.[39] The evidence must show that the nonresident defendant targeted marketing efforts in a state to generate business in that state.[40] When a product is placed within the stream of commerce, additional conduct may indicate an intent or purpose to serve the market of the forum state, including: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; or (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.[41]

Although we acknowledge that foreseeability is only a factor to consider in our minimum contacts analysis and it alone will not support personal jurisdiction, we can consider it.[42] Here, appellants manufactured winches for shrimp boats, and it was foreseeable that these shrimp boats would be used in Texas waters. The evidence shows that appellants made sales of component parts for winches to a Texas corporation and used sales agents to solicit those sales. This intent to serve the Texas market combined with our consideration of the fact that it was foreseeable to appellants that winches they manufactured would reach the Texas coast persuades us that appellants purposefully availed themselves of the Texas courts.

---

[39] *See Moki Mac*, 221 S.W.3d at 575-76.

[40] *Id.*; *Michiana*, 168 S.W.3d at 785.

[41] *Exito Electronics Co., LTD v. Trejo*, 166 S.W.3d 839, 855 (Tex. App.–Corpus Christi 2005, no pet.) (quoting *CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex. 1996)).

[42] *CSR*, 925 S.W.2d at 595.

Our analysis, however, does not end there. Under specific jurisdiction, there must be a substantial connection between the appellants' contacts with the forum state and the operative facts of the litigation.[43] The operative facts of this case are that Flores was injured by an allegedly defective winch on the M/V Capt. Linwood while in Texas waters. However, it is undisputed that the winch that allegedly caused Flores's injuries was sold in Mississippi to an Alabama shipbuilder, not in Texas. Therefore, the winch that allegedly injured Flores was not connected to appellants' contacts with Texas. Although appellants sold component winch parts to a Texas corporation and at one time solicited sales to that corporation, these sales are not substantially connected to the operative facts of this litigation.[44] Therefore, based on the record before us, we conclude that appellants' sales in Texas were too attenuated to satisfy specific jurisdictions's due process concerns. Furthermore, foreseeability alone will not support personal jurisdiction.[45]

3. Other Basis for Jurisdiction

Finally, appellants assert that personal jurisdiction cannot be predicated on Flores's remaining theories that: (1) in actions against a seaman's employer for personal injuries, Flores is required, pursuant to maritime law, to sue his employer "only in the district of the employer's residence or principal place office"; and (2) under maritime law, a seaman is considered a "ward" of the court, and "[a]ny acts detrimental to the interest of the [trial

---

[43] *Moki Mac*, 221 S.W.3d at 585.

[44] *Moki Mac*, 221 S.W.3d at 579, 588 (concluding that the nonresident defendant had purposefully availed itself of Texas jurisdiction under the stream of commerce theory but that the relationship between the operative facts of the litigation and the nonresident defendant's promotional activities in Texas were "too attenuated to satisfy specific jurisdiction's due-process concerns").

[45] *CSR*, 925 S.W.2d at 595.

court's] ward are viewed with considerable suspicion."[46]  Flores cites no authority, and we find none, that allows a forum state to exercise personal jurisdiction over a nonresident defendant merely because the plaintiff is a seaman.  When determining whether the forum has personal jurisdiction over the nonresident defendant, we must only consider the nonresident defendant's contacts with the forum state and not acts of a third person or another party.[47]  We have already concluded that there is no general or specific jurisdiction over appellants in this case; therefore, even if Flores must sue his employer in Texas and is a ward of the state of Texas for purpose of federal supplemental jurisdiction, this is not a basis for personal jurisdiction over appellants in a state court.

## V. CONCLUSION

Having determined that appellants negated all possible grounds for jurisdiction, we sustain their sole issue.  We reverse the trial court's order denying appellants' special appearance and render judgment dismissing the case against appellants for lack of personal jurisdiction.

_____
Linda R. Yañez,
Justice

Delivered and filed
the 11th day of February, 2010.

---

[46] In a supplemental brief filed with leave of this Court, Flores argues that Texas has personal jurisdiction over appellants because 28 U.S.C. section 1367 "mandates that the trial court continue to exercise its jurisdiction over this proceeding."  Section 1367 concerns the supplemental jurisdiction of federal district courts to hear cases involving state claims that derive from a common nucleus of operative facts and would be expected to be tried in one judicial proceeding.  *See Motient Corp. v. Dondero*, 269 S.W.3d 78, 87 (Tex. App.–Dallas 2008, no pet.).  In other words, section 1367 pertains to the federal district court's subject matter jurisdiction.  Therefore, section 1367 is not relevant to our analysis of the state district court's exercise of personal jurisdiction over appellants.  *See CSR, Ltd.*, 925 S.W.2d at 594 ("A court must possess both subject matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment.").

[47] *Michiana*, 168 S.W.3d at 785 ("[P]urposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'") (quoting *Burger King Corp.*, 471 U.S. at 475) (internal quotations omitted).