ACCEPTED
08-21-00135-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
11/2/2021 1:41 PM
ELIZABETH G. FLORES
CLERK

08-21-00135-CV

## NO. 08-21-00135-CV

## IN THE EIGHTH COURT OF APPEALS
## EL PASO, TEXAS

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

11/2/2021 1:41:02 PM

ELIZABETH G. FLORES
Clerk

## OSVALDO RODRIGUEZ BORUNDA AND
## EDITORA PASO DEL NORTE, S.A. DE C.V.

**Appellants**

**v.**

## FREE AND SOVEREIGN STATE OF CHIHUAHUA

**Appellee**

## ON APPEAL FROM THE 448TH DISTRICT COURT
## EL PASO COUNTY, TEXAS
## CAUSE NO. 2020DCV0628

## APPELLANTS' REPLY BRIEF

**Harrel L. Davis III**
**State Bar No. 05567560**
**Gordon Davis Johnson & Shane, P.C.**
**4695 N. Mesa, Suite 100**
**El Paso, Texas 79912**
**(915) 545-1133**
**Fax (915) 545-4433**
**hdavis@eplawyers.com**

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ......................................................................................... ii

**INDEX OF AUTHORITIES** ................................................................................ iii

    **Cases** ............................................................................................................. iii

    **Other Authorities** ....................................................................................... iv

**STATEMENT OF FACTS** ....................................................................................1

**ARGUMENT** ........................................................................................................5

**PRAYER** ............................................................................................................13

**CERTIFICATE OF COMPLIANCE** .................................................................14

**CERTIFICATE OF SERVICE** ..........................................................................15

**APPENDIX** ........................................................................................................16

# INDEX OF AUTHORITIES

## Cases

*Am. Type Culture Collection, Inc. v. Coleman,*
  83 S.W.3d 801, 806 (Tex. 2002) ............................................................................5

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
  480 U.S. 102, 114, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ...............................12

*BMC Software Belg. N.V. v. Marchand,*
  83 S.W.3d 789, 795, 797 (Tex. 2002) ...............................................................5, 6

*Bristol-Myers Squibb Co. v. Superior Court,*
  __ U.S. __, 137 S. Ct. 1773 (2017) ......................................................................8

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462, 475-476 (1985) ................................................................................6

*Daimler AG v. Bauman,*
  571 U.S. 117, 122; 134 S. Ct. 746, 754 (2014) ..................................................6, 7

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,*
  815 S.W.2d 223, 229, 231 (Tex. 1991) ................................................................11

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310, 316 (1945) ......................................................................................10

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770, 776 (1984) ......................................................................................11

*Michel v. Rocket Eng'g Corp.,*
  45 S.W.3d 658, 683 (Tex. App.—Fort Worth 2001, no pet.) ...............................12

*Michiana East Livin' Country, Inc. v. Holten,*
  168 S.W.3d 777, 785 (Tex. 2005) ..........................................................................7

*Moncrief Oil Int'l v. OAO Gazprom,*
  414 S.W.3d 142, 150, 154-155, 158 (Tex. 2013)..................................6, 8, 10, 11

*Spir Star AG v. Kimich*,
   310 S.W.3d 868, 872, 878-79 (Tex. 2010).......................................................7, 10, 11

## Other Authorities

Tex. Civ. Prac. & Rem. Code Ann. §17.042 ...........................................................5

*4 Charles Alan Wright & Arthur R. Miller*
   Federal Practice and Procedure § 1067.5 (3d ed. 2002) .........................................8

## Record References

The following record references will be used in Appellants' Reply Brief:

Clerk's Record……………………………………………………CR [Page]

# STATEMENT OF FACTS

It appears from its Brief that Appellee has figured out that it has sued the wrong entity (assuming that Appellee has a valid cause of action at all) and has changed its identification of the Appellant that allegedly received bribes and/or excessive payments for advertising from El Diario to Editora, the Mexican entity that it actually sued.

In its First Amended Petition, Appellee alleges that the State made illegal and improper payments to Appellant Mr. Borunda "and his newspaper" El Diario de El Paso. CR 340.

The alleged purpose for the payments was so that El Diario would write flattering stories about the then governor, Mr. Duarte, and to report negatively about Mr. Duarte's adversaries. CR 340.

In response to the filing of Appellants' Special Appearance and Rule 91a Motion to Dismiss Baseless Causes of Action, Appellee filed its Second Amended Petition.

In that Second Amended Petition, Appellee made the following allegations against Appellants:

> Further, Mr. Duarte sent tens (if not hundreds) of millions of dollars to his confederate Defendant Osvaldo Rodriguez Borunda and his newspaper El Diario de El Paso. The amounts paid to Mr. Borunda and his newspaper were not authorized, not approved, and far exceed any reasonable amount that should be paid to a newspaper and its owner – even for an improper purpose. As such, these hyper-inflated amounts

were nothing more than bribes and a way to commit further graft against the State of Chihuahua. More specifically, Mr. Duarte was illegally and improperly sending state money to Mr. Borunda and El Diario to report negatively on Mr. Duarte's political adversaries and positively about Mr. Duarte and his administration. Mr. Duarte was also paying money to Mr. Borunda and El Diario for services that were never rendered, overpaying for services that were rendered, and outright bribing Mr. Borunda and El Diario at times. Such was and is illegal. These monies belonged to the state and its people, but were being used to bribe a newspaper and its owner. These monies were sent to Mr. Borunda and his newspaper for illegal and improper purposes. These money transfers were illegal and improper and part of a scheme to defraud the people of Chihuahua for the benefit of Mr. Duarte. Further, Mr. Borunda and the El Diario de El Paso knew that these hundreds of millions of dollars were public funds and that they were being misappropriated, but demanded them anyway. It has been widely reported that more than 600 million pesos were paid to Mr. Borunda and the El Diario de El Paso over five years – more than the government spent on infrastructure over that time period. Indeed, once a new governor was elected, Mr. Borunda and the El Diario de El Paso began pressuring him for similar payoffs with the threat of bad and false articles should he not comply their demands. [emphasis added]

CR 430-431.

Publicaciones E Impresos Paso Del Norte S. de R.L. de C.V. (El Diario de Juarez) and Editora Paso Del Norte S.A. de C.V. are two entirely separate and distinct corporate entities. *See* Exhibit 1 to the Appendix to Appellee's Brief. Editora is not mentioned at all in any factual allegations made by Appellee. All of Appellee's claims related to advertising and articles, which would have been performed by El Diario de Juarez.

In Appellee's Brief, at page 9, Appellee, for the first time, alleges that the payments were made to Editora and not to El Diario, with no underlying pleading to

2

support the same.

Appellee, again, without any supporting pleading or jurisdictional evidence, asserts that Editora is the advertising and real estate arm of Mr. Borunda's business without even identifying that business. That is incorrect.

Appellee continues to misidentify multiple separate entities into El Diario or Editora in the Exhibits it has used in the trial court and in this appeal.

Michael Eddington, one of Appellee's counsel, executed a Declaration which states that Exhibit 3 of the Appendix to Appellee's Brief was from Editora Paso Del Norte's website. CR 518-521. That is incorrect. A cursory review of Exhibit 3 would show that it is actually from Paso Del Norte Publishing, Inc. – a separate Texas entity which happens to publish El Diario de El Paso and which derived zero income from the advertising provided to Appellee in Mexico. Paso Del Norte Publishing also did not write, print or publish any of the articles in Mexico about which Appellee complains.

Mr. Eddington then declares that he has personal knowledge of the State of Chihuahua bank records which are attached as Exhibit 4 to the Appendix to Appellee's Brief. CR 518-519, 524-558.

Allegedly, these are the payments made for the illegal advertising. However, the bank records reflect payments to Publicaciones E Impresos Paso Del Norte S. de R.L. de C.V. (El Diario de Juarez), a Mexican company which is not a party to this

lawsuit. Not a single payment is reflected as having been made to Editora.

Also attached to Appellee's Brief as Exhibit 4 are invoices from Publicaciones E Impresos Paso Del Norte S. de R.L. de C.V. to the State of Chihuahua. CR 524-558. The invoices are not from either El Diario de El Paso or Editora.

Exhibit 5 of the Appendix to Appellee's Brief is a 2016 interview with Mr. Borunda wherein he talks about his newspaper, El Diario. CR 559-567. Editora is not mentioned.

Exhibit 7 of the Appendix to Appellee's Brief is similarly an interview where Editora is not mentioned. CR 574-579.

**ARGUMENT**

Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction and second, the exercise of jurisdiction must comport with federal due process. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

Pursuant to the long-arm statute, Texas can exercise personal jurisdiction over a nonresident defendant that "does business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. §17.042; *BMC Software Belgium, NV v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

The statute lists three activities that constitute "doing business" in Texas:

    a.    Contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas;

    b.    Committing a tort in whole or in part in Texas; and

    c.    Recruiting Texas residents for employment inside or outside of Texas.

Editora has done none of those things and Plaintiff has not proffered any evidence to the contrary.

The "doing business" requirement is also limited by the requirements of federal due process.

5

With respect to personal jurisdiction, federal due process requires two things. First, the defendant must have purposely established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *Burger King v. Rudzewicz,* 471 U.S. 462, 475-476, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985). Second, if the nonresident defendant has purposefully established minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 445-46.

The minimum-contacts requirement protects due-process rights by permitting a state to exercise jurisdiction over a nonresident defendant only when the defendant "could reasonably anticipate being hauled into court there." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 158 (Tex. 2013). Minimum contacts may create either general or specific personal jurisdiction. *Id*. at 150. A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). This test requires "substantial activities within the forum" and presents "a more demanding minimum contacts analysis than for specific jurisdiction." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex.

2002). When a court has general jurisdiction over a nonresident, it may exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). Oswaldo Rodriguez executed his Affidavit, a true and correct copy of which is attached the Appendix filed concurrently herewith at Tab A, specifically CR 440-442, which Affidavit makes it clear that Appellee has not met any of the jurisdictional requirements as it applies to Editora. It is clear why. Appellee has sued the wrong entity.

In recent years, based on the due process requirements, the U.S. Supreme Court has limited general jurisdiction such that there is no general jurisdiction over Editora in this case.

In the *Daimler* case, 134 S. Ct. 746 (2014), the Supreme Court held that a company cannot be subjected to foreign jurisdiction because an affiliated (but distinct) company would be subjected to jurisdiction, rejecting any argument that a corporation may be agents of their affiliates, subsidiaries, parent companies, etc., for jurisdiction purposes.

The Texas Supreme Court reached the same conclusion in *Michiana East Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) explaining that only the defendant's own actions may constitute purposeful availment. A defendant may not be hauled into a jurisdiction based solely on the unilateral activities of a third

party. Appellee has not plead any acts by Editora in either Mexico or Texas.

By contrast, courts may exercise specific jurisdiction when the defendant's forum contacts are "isolated or sporadic," as opposed to "continuous and systematic," but only if the plaintiff's cause of action arises from or relates to those contacts. *Id.* at 872-73 (quoting *4 Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure § 1067.5 (3d ed. 2002)); *see also Moncrief Oil*, 414 S.W.3d at 150 ("[S]pecific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state."). For specific jurisdiction, we must analyze the defendant's contacts "on a claim-by-claim basis" to determine whether each claim arises out of or is related to the defendant's minimum contacts. *Moncrief Oil*, 414 S.W.3d at 150. None of Editora's activities took place in Texas.

In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), the Supreme Court further limited jurisdiction. It limited a state courts ability to assert personal jurisdiction to those activities or occurrences that take place in the forum state and thus subject to the forum states regulation.

In *Bristol-Myers Squibb*, a group of plaintiffs, most of whom were not California residents, sued Bristol-Myers Squibb (BMS) in California state court, alleging that they were injured by BMS's blood-thinning drug Plavix. The California Superior Court held that California courts lacked general jurisdiction over BMS (a Delaware Corporation headquartered in New York) but could assert specific

8

jurisdiction over all claims, even those claims brought by non-resident Plaintiffs who did not purchase Plavix in California and were not injured in California.

On appeal, the United States Supreme Court reversed, holding that California courts lacked specific jurisdiction over claims brought by the non-resident class members. In other words, the Court held that the non-resident claims were not sufficiently related to the following of BMS's connections to California: (1) BMS's five research and laboratory facilities employing a total of 160 employees in California; (2) its state-government advocacy office in Sacramento; and (3) its employment of 250 sales representatives in California. The Court explained that these activities were not specifically related to the non-resident plaintiffs' Plavix claims because BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California. All of these activities took place in New York or New Jersey. The Court also found it insufficient that BMS took $900 million from Plavix sales in the state, as none of the non-resident plaintiffs alleged that they purchased Plavix in California.

Editora undertook no actions in Texas and, therefore, the state courts of Texas have no jurisdiction over it.

Further, Appellee has not described any action that Mr. Rodriguez undertook in Texas. All alleged unlawful activities took place in Mexico. The only possible

action against Mr. Rodriguez would be *in rem* claims for assets in Texas derived from Appellee's money assuming that Appellee's money was actually paid to Mr. Rodriguez and transferred to Mexico for which Appellee has provided zero evidence.

Even when a nonresident has established minimum contacts with a state, due process permits the state to assert jurisdiction over the nonresident only if doing so comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moncrief Oil*, 414 S.W.3d at 154. Typically, "[w]hen a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, it is both fair and just to subject that defendant to the authority of that forum's courts." *Spir Star*, 310 S.W.3d at 872. Thus, "[i]f a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154-55.

The Texas courts consider several factors to evaluate the fairness and justness of exercising jurisdiction over a nonresident defendant: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social

policies. *Id.* at 155. When the defendant is a citizen of a foreign country, and not just another state, we consider more specifically (6) "the unique burdens placed upon the defendant who must defend itself in a foreign legal system;" (7) the state's regulatory interests; and (8) "the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 229 (Tex. 1991. "To defeat jurisdiction, [the defendant] must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable'" *Spir Star*, 310 S.W.3d at 878-79 (quoting *Guardian Royal*, 815 S.W.2d at 231).

The state of Texas has no interest in the actions in Mexico complained of by Appellee.

Fundamentally, "[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984), and we have never conditioned that interest on the plaintiff's status as a Texas "citizen," as opposed to a Texas "resident." *See, e.g., Moncrief Oil*, 414 S.W.3d at 155 ("[T]he allegations that . . . Defendants committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute."); *Spir Star*, 310 S.W.3d at 879 ("Texas has a significant interest in exercising jurisdiction over controversies arising from injuries a Texas

resident sustains . . . ."); *see also Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 114, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). When a cause of action is not connected to Texas and none of the parties are Texas residents, fairness becomes of paramount importance. *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 683 (Tex. App.—Fort Worth 2001, no pet.).

All of the actions complained of here took place in Mexico. All of the witnesses are in Mexico and it is uncertain that they would be able to travel to Texas to testify or would be willing to do so. All of the documents are in Spanish. It would be unfair to all defendants to try this case anywhere but in Mexico, where every complained of transaction took place.

Every article was printed and published in Mexico. Every invoice from Publicaciones E Impresos Paso Del Norte S. de R.L. de C.V. was sent to Appellee in Mexico. Every advertisement was in Mexico. Every payment was made in Mexico.

Texas has absolutely no relationship to or interest in this litigation.

## PRAYER

For the above reasons, Appellants respectfully request that this Court reverse the Trial Court's July 9, 2021 Order Overruling Defendants Osvaldo Rodriguez Borunda and Editora Paso Del Norte, S.A. de C.V.'s Special Appearance Objecting to Jurisdiction in all respects, award recoverable court costs to Appellants, and for such other and further relief, both general and special, at law or in equity, to which Appellants may be justly entitled.

/s/ Harrel L. Davis III
Harrel L. Davis III
State Bar No. 05567560
Gordon Davis Johnson & Shane, P.C.
4695 N. Mesa, Suite 100
El Paso, Texas 79912
(915) 545-1133
(915) 545-4433 Fax
hdavis@eplawyers.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(C) because this brief contains 2,798 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ Harrel L. Davis III*
Harrel L. Davis III

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the EFile.TXCourts.gov system on November 2, 2021. All attorneys identified with the Court for electronic service on record in this case were served by electronic service in accordance with the EFile.TXCourts.gov system.

*/s/ Harrel L. Davis III*
Harrel L. Davis III

# APPENDIX

Affidavit of Osvaldo Rodriguez Jimenez in Support of
Editora Paso Del Norte, S.A. de C.V.'s and Osvaldo Rodriguez
Borunda's Special Appearance ................................................................Tab A

**TAB A**

El Paso County - 448th District Court

Filed 4/14/2021 9:03 AM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV0628

## IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
## 448TH JUDICIAL DISTRICT

| | | |
|---|---|---|
| FREE AND SOVEREIGN STATE OF CHIHUAHUA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 2020DCV0628 |
| CESAR HORACIO DUARTE JAQUEZ, et al., | § § § | |
| Defendants. | § | |

### AFFIDAVIT OF OSVALDO RODRIGUEZ JIMENEZ
### IN SUPPORT OF EDITORA PASO DEL NORTE, S.A. de C.V.'S and
### OSVALDO RODRIGUEZ BORUNDA'S SPECIAL APPEARANCE

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) |
| COUNTY OF EL PASO | ) |

Before me, the undersigned authority, on this day personally appeared Osvaldo Rodriguez Jimenez, known to me to be the person whose name is subscribed hereto, who stated under oath as follows:

1. "My name is Osvaldo Rodriguez Jimenez. I am the duly authorized representative of Editora Paso Del Norte, S.A. de C.V. ("Editora"), one of the Defendants in the above-referenced and styled lawsuit. I have personal knowledge of the facts stated in this affidavit, which are true and correct, and I am authorized in all respects to make this affidavit and these statements. The statements made herein also apply to the Special Appearance of Osvaldo Rodriguez Borunda ("Mr. Rodriguez"). I am over the age of 18 years and am fully competent to testify to the matters stated herein.

2. "The current governor of Plaintiff is Javier Corral Jurado. He became governor in October 2016. Mr. Corral and Mr. Rodriguez, another one of the Defendants herein and Editora's principal, have had a contentious relationship for a number of years and El Diario de Juarez has published a number of unflattering, but truthful, articles about Mr. Corral starting long before Mr. Corral became governor in October 2016.

3. "Because of those articles, Mr. Corral has, in Mexico, publicly made slanderous claims about El Diario de Juarez and Mr. Rodriguez. El Diario de Juarez filed suit against Mr. Corral in Mexico in February 2020 in order to try to stop those slanderous attacks. In return, in March 2020, Mr. Corral filed a libel lawsuit against El Diario de Juarez, the entity that prints and publishes the Juarez, Chihuahua, Mexico newspaper.

440

4. "Plaintiff, even after Mr. Corral became governor, continued to request that El Diario de Juarez provide it with advertising services. It did so. However, when the above-referenced conflicts started to arise, Plaintiff ceased paying for that advertising. That refusal to pay for advertising that Plaintiff had requested caused El Diario de Juarez to file a collection suit against the State of Chihuahua in Mexico in September, 2020.

5. "Mr. Corral then asked the State's attorney to add Editora and Mr. Rodriguez as Defendants in this action. None of the complained of transactions as to these Defendants took place in the United States, and none of the alleged funds were used to purchase property in Texas.

6. "Editora is not a resident of Texas. Editora does not engage in any business in Texas other than hold certain accounts and neither it or Mr. Rodriguez have committed any tort, in whole or in part, within the State of Texas. Certainly, none of the acts complained of by Plaintiff took place or would have taken place in Texas. Editora does not maintain a place of business in Texas and has no employees, servants, or agents within the State of Texas. Editora has no substantial connection with Texas arising from any action or conduct of Editora purposefully directed towards Texas. Editora does not own any real estate in Texas.

7. "Plaintiff's claims do not arise from and are not related to any activity allegedly conducted by Editora or Mr. Rodriguez in Texas. It appears from the First Amended Petition that Plaintiff is complaining that the prior governor provided funds for the purpose of obtaining favorable articles. Neither Editora nor Mr. Rodriguez publish newspapers, much less articles. No funds were ever paid directly to Editora or Mr. Rodriguez by Plaintiff for the publishing of articles. The State of Chihuahua did purchase advertising and legally required notices from El Diario de Juarez, but, again, all of those transactions took place in Mexico.

8. "Editora has not had continuous or systematic contacts with the State of Texas. Plaintiff's alleged cause of action against Editora and Mr. Rodriguez do not arise from any contacts between Editora and Mr. Rodriguez and the State of Texas. Thus, Editora and Mr. Rodriguez had no basis to reasonably anticipate being hauled into court in Texas in regard to either the claims at issue or any other occurrence. The Court's assumption of jurisdiction over Editora or Mr. Rodriguez would clearly offend traditional notions of fair play and substantial justice denying Editora or Mr. Rodriguez due process of law. Mr. Rodriguez is a Mexican citizen. Both he and Editora agree to jurisdiction in Mexico."

Affiant says nothing further.

_____
Osvaldo Rodriguez Jimenez, Affiant


SUBSCRIBED AND SWORN TO before me on this, the __13__ day of
__April_____, 2021, certify which, witness my hand and seal of office.

_____
Notary Public in and for
The State of Texas

Gloria M. Martinez
ID# 1025175-5
NOTARY PUBLIC
In and for the State of Texas
My commission expires
02-06-2023

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Virginia Rust on behalf of Harrel Davis III
Bar No. 5567560
vrust@eplawyers.com
Envelope ID: 58771492
Status as of 11/2/2021 4:50 PM MST

Associated Case Party: Editora Paso Del Norte, S.A. de C.V.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Harrel LDavis III | | hdavis@eplawyers.com | 11/2/2021 1:41:02 PM | SENT |
| Virginia Rust | | vrust@eplawyers.com | 11/2/2021 1:41:02 PM | SENT |
| Cynthia Canales | | ccanales@eplawyers.com | 11/2/2021 1:41:02 PM | SENT |
| Victoria Pena | | vpena@eplawyers.com | 11/2/2021 1:41:02 PM | SENT |

Associated Case Party: Free and Sovereign State of Chihuahua

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jessica Salto | | jsalto@txattorneys.com | 11/2/2021 1:41:02 PM | SENT |
| Caroline Adams | | cadams@txattorneys.com | 11/2/2021 1:41:02 PM | SENT |
| Christopher Leavitt | | cleavitt@txattorneys.com | 11/2/2021 1:41:02 PM | SENT |
| Anthony Buzbee | | tbuzbee@txattorneys.com | 11/2/2021 1:41:02 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| R. Yetter | | pyetter@yettercoleman.com | 11/2/2021 1:41:02 PM | SENT |
| Matthew Zorn | | mzorn@yettercoleman.com | 11/2/2021 1:41:02 PM | SENT |
| Lisa Prince | | lprince@yettercoleman.com | 11/2/2021 1:41:02 PM | SENT |
| Bryce Callahan | | bcallahan@yettercoleman.com | 11/2/2021 1:41:02 PM | SENT |
| Victor Firth | | vfirth@f-jlaw.com | 11/2/2021 1:41:02 PM | SENT |